Strafford
No. 93-347

THE STATE OF NEW HAMPSHIRE

v.

EVERETT J. TAYLOR

November 2, 1994

*Jeffrey R. Howard,* attorney general (*Ann M. Rice,* assistant attorney general, on the brief and orally), for the State.

*Beverly B. Kennedy,* of Kingston, on the brief and orally, for the defendant.

HORTON, J.   The defendant, Everett J. Taylor, was convicted after a jury trial in the Superior Court (*Fitzgerald, J.*) of two counts of felonious sexual assault of a ten-year-old girl in violation of RSA 632-A:3, III (1986). We affirm.

The details of this child molestation case need not be set forth; it is sufficient to examine only those circumstances that surround the defendant's points of appeal.

■  The defendant first argues that the trial court erred in refusing to review, *in camera,* New Hampshire Division of Children and Youth Services (DCYS) records pertaining to the victim. Discovery by a criminal defendant of material in a DCYS file is controlled by *State v. Gagne,* 136 N.H. 101, 612 A.2d 899 (1992). In *Gagne,* we explained that competing concerns are involved—the defendant's interest in obtaining evidence helpful to his defense, and the victim's statutorily mandated right to confidentiality—and concluded that *in camera* review for such material can often harmonize those concerns. In order to trigger such *in camera* review of DCYS records, "the defendant must establish a *reasonable probability* that the records contain information that is material and relevant to his defense." *Id.* at 105, 612 A.2d at 901 (emphasis added).

■■  The defendant's strongest argument that the DCYS file contained information material to his defense was that he had reason to believe the victim had been interviewed by DCYS. Accordingly, he insisted that "the requested information is necessary for counsel to adequately and effectively prepare to confront and cross-examine the witnesses and . . . is relevant to the credibility, reliability, bias or motive of any witness the State may call." This general assertion all but parrots the defendant's general assertion in *Gagne* where we remanded for *in camera* review. In *Gagne,* however, the defendant went on to make five specific arguments concerning relevant evidence that, according to information obtained independently by counsel, may have been contained in the DCYS file. *Id.* at 103, 106, 612 A.2d at 900, 902. Here, the defendant never ventured beyond his general assertion. Accordingly, the defendant essentially asks that we adopt a rule requiring a trial court to conduct an *in camera* review whenever DCYS has interviewed a victim. When a trial court knows nothing more than that a victim has spoken with DCYS, the defendant has not established a reasonable probability that the DCYS records contain information that is material and relevant to the defense.

At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by information in the DCYS file.

■ The defendant next argues that the trial court erred in allowing two adult women to testify that he had sexually assaulted them approximately twenty years before when they were children. We disagree.

Prior to trial, the court denied the State's motion *in limine* to allow the two women to testify under New Hampshire Rule of Evidence 404(b). During examination of the defendant at trial by his own attorney, however, the following colloquy took place:

[Attorney]: Now, at any time whatsoever during that evening . . . did you ever touch [the victim] in an inappropriate manner?

[Defendant]: No, I did not touch [the victim] in any inappropriate manner. *I wouldn't do a thing like that.*

. . . .

[Attorney]: And what occurred when you went to the Barrington Police Department? What happened there?

[Defendant]: They read me my Miranda rights and as soon as they read me my Miranda rights, then I was accused of something that I did not do and *wouldn't do.*

(Emphasis added.) The trial court agreed with the State that the defendant had "opened the door"; specifically, the court found that the defendant had placed his character "in issue." The court allowed the State to cross-examine the defendant about the prior sexual assaults and, after denials on cross-examination, allowed the State to introduce extrinsic evidence of the assaults by way of the women's testimony. The trial court indicated that it was admitting this extrinsic evidence under New Hampshire Rule of Evidence 404(a), but issued this limiting instruction: "[S]uch evidence is not admitted to show that the defendant acted in conformity with that conduct. It is merely admitted to rebut the defendant's own assertion of good character." The trial court gave a similar caution in its final instructions.

The defendant, insisting that all he did was deny the specific charges for which he was on trial, first argues that the trial court erred in finding that he had "opened the door" or placed his

character "in issue." In finding that the defendant had gone beyond merely denying the particular charges, the trial court considered not only the words uttered by the defendant, but also its own observations of the defendant, noting that when the defendant made the quoted responses, "[h]is appearance and demeanor became almost indignant." The trial court is in the best position to make this determination, and we will not disturb such a finding absent an abuse of discretion. *See State v. Michaud,* 135 N.H. 723, 729, 610 A.2d 354, 357 (1992). Here, we find none.

The defendant argues that even if he did go beyond denying the specific charges, the trial court nonetheless erred in admitting extrinsic evidence of the prior assaults. The State concedes that this evidence should not have been admitted, as it was, under Rule 404(a), but urges us to uphold the trial court's ruling on grounds not relied upon by the trial court; namely, that under *State v. Mello,* 137 N.H. 597, 631 A.2d 146 (1993), the defendant's responses to his lawyer's questions "opened the door" to otherwise inadmissible impeachment evidence. We agree.

As evidenced by the trial court's limiting instruction, this case does not involve the use of evidence of prior acts to show bad character and conformity therewith. It was not offered as part of the State's case in chief. Instead, the trial court essentially instructed the jury only to consider the prior acts for impeachment purposes—in the words of the trial court, "merely . . . to rebut the defendant's own assertion of his good character."

■ On its face, New Hampshire Rule of Evidence 608(b) appears to provide that a party may never prove, by extrinsic evidence, specific instances of a witness's conduct for the purpose of impeaching that witness. We explained in *Mello,* 137 N.H. at 600, 631 A.2d at 148, however, that Rule 608(b)'s prohibition against using extrinsic evidence is directed at its use to attack a witness's *general* credibility. Where, as here, the defendant has created a misleading advantage by lying under oath, he may be deemed to have "opened the door" and entitled the State to counter with otherwise inadmissible evidence to show that the defendant lied and to refute the misleading impressions created by his testimony. *Id.* at 600–01, 631 A.2d at 148. Were the rule otherwise, the defendant would enjoy "a license to make affirmative misrepresentations and commit perjury without fear of contradiction." *Id.* at 601, 631 A.2d at 149. Applying this distinction between general and specific credibility, we held in *Mello* that, after the defendant had testified he had been arrested only for drunkenness, the trial court properly allowed the State to show that, in fact, the defendant previously had been arrested for

rape and kidnapping. Similarly, in the present case, the trial court allowed the State to show that the defendant was lying when he volunteered on direct examination that he would never sexually abuse (and implicitly had never abused) a child. We find no abuse of discretion in the trial court's limited admission for impeachment purposes.

■ The defendant next argues that his privilege against self-incrimination under the State and Federal Constitutions was violated when the trial court ordered him to answer questions regarding the prior sexual assaults of the two women. Because the defendant did not raise a State constitutional claim below, and because neither a State nor a federal constitutional issue was raised in the defendant's notice of appeal, this matter is not properly before this court and will not be considered. *State v. Horne,* 136 N.H. 348, 349, 615 A.2d 1251, 1252 (1992); *State v. Peterson,* 135 N.H. 713, 714, 609 A.2d 749, 750 (1992); SUP. CT. R. 16(3)(b).

The defendant next argues that the trial court should have declared a mistrial because of improper remarks by the prosecutor during closing argument, including expressing personal opinions regarding the credibility of witnesses. We find no impropriety.

■■ Prosecutors have great latitude during closing argument to summarize and discuss the evidence and to urge the jury to draw reasonable inferences therefrom, *State v. Sylvia,* 136 N.H. 428, 431, 616 A.2d 507, 509 (1992), but may not profess their personal opinions as to the credibility of witnesses or the guilt of the accused. *State v. Bujnowski,* 130 N.H. 1, 4, 532 A.2d 1385, 1387 (1987). Citing *Bujnowski,* the defendant argues that the prosecutor impermissibly professed personal opinions when during closing argument he made statements including "you've been lied to" and "[the victim] told the truth." This case is readily distinguishable from *Bujnowski.* There, the prosecutor left no doubt that he was expressing personal opinions inasmuch as his statements began with *"I think." Id.* at 3, 532 A.2d at 1386. Here, the trial court could have found, as it did, that the prosecutor's statements were not expressions of personal opinion, but rather appropriate exhortations to draw certain inferences regarding the credibility of the victim and the defendant. *See State v. Bureau,* 134 N.H. 220, 589 A.2d 1013 (1991). We have considered the defendant's other claims of improper prosecutorial comments and find them unpersuasive.

The defendant next argues that the trial court, after sentencing him to two consecutive three-and-one-half to seven-year terms,

abused its discretion in denying his post-sentencing motions for bail pending appeal, for a stay of the execution of his sentence pending appeal, and for incarceration in the county house of correction pending appeal. Further, he contends that the statute prohibiting bail after a felonious sexual assault conviction, RSA 597:1-a, I (Supp. 1993), is unconstitutional. These issues, in light of the holdings in this opinion, are moot.

█ Finally, the defendant argues that at sentencing the trial court erred in considering the prior sexual assaults of the two women because they were "unsubstantiated and uncorroborated," and erred in considering written statements by the two women because, in violation of Superior Court Rule 112 and RSA 651:4, II (1986), he had no opportunity to rebut their contents. We will not address the second argument because no specific objection was made below. *See State v. VanDerHeyden,* 136 N.H. 277, 282, 615 A.2d 1246, 1249 (1992). Turning to the reliability issue, we held in *State v. Tufts,* 136 N.H. 517, 519–20, 618 A.2d 818, 819 (1992), that a sentencing court may consider other offenses provided there is "suspicion to the point of probability." Here, the trial court during trial had the opportunity to hear both prior victims testify and answer questions on cross-examination. The trial court could properly find that the requisite level of suspicion was met based solely on that testimony.

*Affirmed.*

All concurred.