Rockingham
No. 96-169

# THE STATE OF NEW HAMPSHIRE

### v.

# MELVIN GRAHAM

October 29, 1997

*Steven M. Houran*, acting attorney general (*Joseph N. LaPlante*, assistant attorney general, on the brief and orally), for the State.

*Donald E. Bisson*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. After a jury trial in Superior Court (*Gray*, J.), the defendant, Melvin Graham, was convicted on three counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996), and one count of felonious sexual assault, *see* RSA 632-A:3, III (1996), committed against his minor niece. On appeal, the defendant argues that the trial court erred in: (1) denying his motions to dismiss and for a directed verdict based on insufficient evidence for two of the charges; (2) excluding from trial certain testimony from a proposed defense witness; and (3) denying his pretrial request for *in camera* review of records of the New Hampshire Division for Children, Youth, and Families (DCYF). We affirm in part, vacate in part, and remand.

The following facts were adduced at trial. On October 14, 1994, the defendant's niece, Brandy, and her friend, Sarah, spent the night at the defendant's house in Seabrook. Both girls were eight years old at the time. After dinner, the girls took a bath, then went into the defendant's bedroom and got into his bed. Brandy testified that the girls wore no clothing to bed. Sometime later, the defendant, who was also naked, entered the room and got onto the bed with the girls. Brandy testified that the defendant then assaulted her, making her touch his "privates" with her hands in an "up and down" motion, putting his "privates" in her mouth, and touching her "privates" with both his hands and his "privates." Although Sarah testified at trial, she was not forthcoming about the events which allegedly took place after dinner, and thus did not corroborate Brandy's account of the charged assaults.

The day after the incident, Sarah spoke with her mother. Although the details of the discussion were not elicited at trial, Sarah's mother testified that the conversation prompted her to contact the Seabrook police, who subsequently commenced an investigation of the defendant regarding allegations of inappropriate sexual conduct. These allegations became the basis for the indictments brought against the defendant. The defendant testified at trial and denied committing the charged offenses.

## I. *Sufficiency of the Evidence*

The defendant argues that the State presented insufficient evidence to sustain his convictions on two of the indictments, 94-S-1999 and 94-S-2000, which alleged that the defendant touched the victim's vagina with his hand and with his penis, respectively. The defendant

asserts that the victim's use of the term "privates" to describe where the defendant allegedly touched her was not sufficiently specific to establish that the defendant touched her vagina as charged. As such, the defendant contends that the jury could not find beyond a reasonable doubt that he committed those charged offenses. *See State v. Tarantino*, 140 N.H. 523, 525, 668 A.2d 45, 47 (1995) (State must prove each element of offense beyond a reasonable doubt).

■ In reviewing a sufficiency of the evidence claim, we view the evidence presented at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the State, *State v. Chamberlain*, 137 N.H. 414, 416, 628 A.2d 704, 706 (1993), and uphold the jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Bissonnette*, 138 N.H. 82, 84, 635 A.2d 468, 469 (1993). Where, as here, "the victim's testimony suffices to establish a *prima facie* case, no corroborating evidence is needed." *State v. O'Neill*, 134 N.H. 182, 185, 589 A.2d 999, 1002 (1991). Because this case does not rely solely upon circumstantial evidence, the evidence need not "exclude all rational conclusions except guilt." *Cf. State v. Laudarowicz*, 142 N.H. 1, 5, 694 A.2d 980, 983 (1997). The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt. *State v. Smith*, 127 N.H. 433, 436, 503 A.2d 774, 776 (1985).

■ We conclude that based on the victim's testimony, a rational finder of fact could have found beyond a reasonable doubt that the defendant touched the victim's vagina. *See Bissonnette*, 138 N.H. at 84, 635 A.2d at 469. The meaning of the term "privates," as used by the victim at trial, was clarified through additional testimony and demonstrative evidence elicited by the State. First, during questioning concerning a separate charged assault, the victim used the term "privates" to describe the part of the defendant's body that she touched. To clarify the term, the prosecutor elicited from the victim that the defendant's "privates" turned hard when she moved her hand up and down, and that "whitish" "stuff" came out of it. From this exchange, a rational jury could infer that the victim was referring to the defendant's genitalia when she said "his privates," and the victim's subsequent testimony that the defendant touched *her* "privates" could reasonably be construed as referring to her own genitalia, namely, her vagina.

■ The State's use of a stuffed bunny as a demonstrative aid further supports the inference that the victim used "privates" to

mean her vagina. *Cf. O'Neill*, 134 N.H. at 186, 589 A.2d at 1002 (no demonstrative aid used to clarify child victim's testimony). The trial transcript reflects the court's observation that when asked to show where on the bunny were the "privates," the victim pointed to the area between the bunny's legs; she also touched the bunny's hand to indicate that the defendant had used his hand to touch her "privates." Based on this demonstration, the jury could fairly infer that the victim used the term "privates" to refer to her genitalia, *cf. State v. Devaney*, 139 N.H. 473, 475, 657 A.2d 832, 834 (1995), and not to another body part such as her leg or buttocks. Finally, we note that the use of "privates" to connote genitals accords with the common meaning of the word. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1805 (unabridged ed. 1961) (defining "privates" as "genitalia"); *cf. O'Neill*, 134 N.H. at 187, 589 A.2d at 1003 (prosecutor failed to show that "bum" meant something other than dictionary definition).

We are not persuaded by the defendant's argument that our decisions in *O'Neill*, 134 N.H. 182, 589 A.2d 999, and *State v. Fennell*, 133 N.H. 402, 578 A.2d 329 (1990), control our analysis. In the instant case, the jury was not asked to infer the commission of the charged act from circumstantial evidence of the conduct surrounding the alleged act. *Cf. O'Neill*, 134 N.H. at 186, 589 A.2d at 1002-03. Rather, the jury was asked to find beyond a reasonable doubt, based on the victim's *direct* testimony, that she was referring to her vagina when she referred to her "privates." Viewing the victim's testimony and all reasonable inferences drawn therefrom in the light most favorable to the State, the jury could have found beyond a reasonable doubt that the defendant unlawfully touched the victim's vagina.

## II. Exclusion of Witness

The defendant next appeals the trial court's exclusion of testimony from a proposed defense witness. The witness, who allegedly observed the defendant's genitals three to four days after the charged assaults occurred, would have testified that she observed "cold-sore like blisters on [the defendant's] penis, some of which were crusted over," and that his penis "looked very red and swollen and painful." The State moved *in limine* to exclude the testimony on two grounds: that the witness was not qualified to diagnose any lesions she may have observed, and that her testimony was irrelevant since the assaults occurred prior to the alleged observation. The trial court granted the State's motion, ruling that a description

of the condition of the defendant's genitals several days after the assaults was not relevant.

■ The determination of the relevance of evidence is a matter for the trial court's sound discretion, and we will not overturn such a determination absent an abuse of discretion. *State v. Walsh*, 139 N.H. 435, 436, 655 A.2d 912, 913 (1995). To show an abuse of discretion, the defendant must demonstrate that the court's ruling "was clearly untenable or unreasonable to the prejudice of his case." *State v. Hokanson*, 140 N.H. 719, 721, 672 A.2d 714, 715 (1996). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. EV. 401. Evidence that is not relevant is inadmissible. N.H. R. EV. 402.

The defendant argues that the testimony was relevant because it would have corroborated his testimony that he had an active herpes outbreak at the time of the assaults. This evidence tended to establish that the defendant could not have engaged in the charged acts, either because sexual contact involving his penis during an outbreak would have been extremely painful or because the victim would have contracted the herpes virus from the defendant.

■ Based on the defendant's offer of proof, the trial court reasonably could have concluded that the defendant failed to establish a medical nexus between the proposed testimony and his own which would support a ruling that the testimony was relevant. *See State v. Smith*, 135 N.H. 524, 527, 607 A.2d 611, 613 (1992). Specifically, the defendant's medical expert failed to provide any testimony connecting the lay witness's observations to the defendant's testimony regarding the condition of his penis on the day of the charged assault. Accordingly, we cannot say that the trial court abused its discretion in excluding the witness's testimony. *See Walsh*, 139 N.H. at 436, 655 A.2d at 913.

*III. In Camera Review*

Finally, the defendant appeals the trial court's denial of his pretrial motion for *in camera* review of DCYF records pertaining to the victim. *See State v. Gagne*, 136 N.H. 101, 612 A.2d 899 (1992). "[I]n order to trigger an *in camera* review of confidential or privileged records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense." *Id.* at 105, 612 A.2d at 901; *see State v. Locke*, 139 N.H. 741, 744, 663 A.2d 602, 604 (1995). The defendant

argues that the trial court misapplied this standard in denying his motion.

■ The threshold showing necessary to trigger an *in camera* review is not unduly high. The defendant must meaningfully articulate how the information sought is relevant and material to his defense. To do so, he must present a plausible theory of relevance and materiality sufficient to justify review of the protected documents, *cf. Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987), but he is not required to prove that his theory is true. "At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by" the information sought. *State v. Taylor*, 139 N.H. 96, 99, 649 A.2d 375, 376 (1994).

■ To trigger review, the defendant need not articulate the "precise nature" of the purported contents of the records. *Gagne*, 136 N.H. at 105, 612 A.2d at 901. Indeed, such a requirement would effectively render review superfluous, as the defendant essentially would have to obtain the information itself in order to meet his burden. The defendant must merely demonstrate a *"reasonable probability"* that the privileged records actually contain the information. *See id.; cf., e.g., Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 802-03, 677 A.2d 665, 669 (1996) (showing of "reasonable probability" does not require showing of "mathematical certainty").

■ Neither the State, in its role as prosecutor, nor the defendant has direct access to DCYF records. *See* RSA 169-C:25, III (1994); RSA 170-G:8-a (1994 & Supp. 1996). *Gagne* provides a means of discovering, through the limited initial intrusion of *in camera* judicial review, *cf. Ritchie*, 480 U.S. at 60 (noting that full disclosure would compromise State's interest in protecting its child-abuse information), whether relevant and material evidence is *in fact* contained in the records. *Gagne*, 136 N.H. at 105, 612 A.2d at 901. If the bar to *in camera* review is set too high, we risk depriving the defendant of his constitutional right to due process. *See* N.H. CONST. pt. I, art. 15; *Gagne*, 136 N.H. at 105, 612 A.2d at 901. In contrast, the harm done by disclosing the information to the trial court in the first instance is minimal. *Cf. Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 478, 686 A.2d 310, 314 (1996) (noting that *in camera* review is appropriate where release of records may cause invasion of privacy).

The trial court denied the defendant's motion without opinion, providing no reasons for its ruling. Having reviewed the transcript

of the hearing on the motion, we are unsure, on the record before us, whether the trial court applied the *Gagne* standard, as explained above, for determining whether to grant *in camera* review of privileged documents. *See Gagne*, 136 N.H. at 105, 612 A.2d at 901. Under the circumstances of this case, we vacate the court's ruling and remand for application of that test. If on remand the trial court determines that the defendant has met his burden under *Gagne*, the court should conduct an *in camera* review of the DCYF records, and then determine whether the records contain evidence that would have been "essential and reasonably necessary" to the defense at trial. If the records do contain such evidence, the court should order a new trial unless it finds that the error of not admitting the evidence in the first trial was harmless beyond a reasonable doubt. *See id.* at 106-07, 612 A.2d at 902.

*Affirmed in part; vacated in part; remanded.*

All concurred.