Hillsborough-southern judicial district
No. 98-515

THE STATE OF NEW HAMPSHIRE

v.

RONALD MCLELLAN

March 7, 2001

*Philip T. McLaughlin*, attorney general (*Christopher H.M. Carter*, assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Ronald McLellan, was convicted in Superior Court (*Dalianis*, J.) of one count of aggravated felonious sexual assault and four counts of misdemeanor sexual assault. *See* RSA 632-A:2, I(j)(1) (1996) (amended 2000); RSA 632-A:4 (1996). Because the trial court found that the defendant's aggravated felonious sexual assault conviction was his third, he was sentenced to life imprisonment without the possibility of parole, *see* RSA 632-A:10-a, III (1996) (amended 2000), and also sentenced to four concurrent twelve-month terms on the misdemeanor convictions. We affirm in part, reverse in part, vacate the sentence and remand for further proceedings consistent with this opinion.

The record supports the following facts. During the time period covered by the indictments, the defendant lived in Nashua with his girlfriend and two of her daughters. Another daughter, Paula, resided in Massachusetts. On December 7, 1995, Paula reported to the Nashua Police that the defendant had sexually assaulted one of her sisters.

The day the report was made, Detective John Gallagher interviewed the victim. She told him about three incidents involving the defendant, but was uncertain as to when they occurred. She reported to Gallagher that she willingly engaged in the activities she described. As the victim had recently turned sixteen, when the incidents occurred was critical to whether her purported consent vitiated the defendant's criminal culpability. *See* RSA 632-A:2, I(j).

On December 11, 1995, Gallagher again interviewed the victim while Jane Enright of the New Hampshire Division for Children, Youth and Families (DCYF) was present. During the interview, according to a "Law Enforcement Letter" subsequently drafted by Enright, the victim disclosed "ongoing sexual abuse by [the defendant]."

Approximately three weeks later, Gallagher met with the victim and her mother to discuss placing the victim with relatives. According to information defense counsel received from the victim's mother, Enright was present at the meeting.

Gallagher conducted another interview with the victim on January 11, 1996, at which time she recalled an additional incident involving

the defendant which occurred prior to her sixteenth birthday. She claimed that the defendant was in a position of authority over her and that some of the incidents were not consensual. She also explained that she allowed the defendant to engage in sexual acts with her because she did not want the defendant to do the same thing to her younger sister.

Prior to jury selection, the defendant moved, unsuccessfully, for an order allowing his counsel to conduct sequestered, individual voir dire of potential jurors. He also filed a motion to secure the confidential DCYF investigation records of the victim. After a hearing, the motion was denied because the defendant made an insufficient showing under *State v. Gagne*, 136 N.H. 101, 105 (1992).

The defendant was convicted and subsequently sentenced in July 1998. After finding that he had been convicted of two prior aggravated felonious sexual assaults, the trial court sentenced him to life without parole pursuant to RSA 632-A:10-a, III.

On appeal, the defendant argues the trial court erred in: (1) refusing to allow his counsel to conduct sequestered, individual *voir dire*; (2) refusing to conduct an *in camera* review of confidential DCYF records; (3) using the wrong standard of proof to establish his prior convictions for the purposes of sentence enhancement; and (4) finding sufficient evidence to prove his identity as the person convicted of the prior assaults.

I

The defendant first contends that because he faced mandatory life imprisonment without parole, *see* RSA 632-A:10-a, III, the trial court should have granted his request for sequestered, individual *voir dire.* Arguing that first degree murder defendants face the same mandatory sentence, *see* RSA 630:1-a, III (1996), and that trial courts generally allow sequestered, individual *voir dire* in such cases, the defendant asserts that he is entitled to the same procedural safeguards under the equal protection provisions of the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 2; U.S. CONST. amend. XIV, § 1. We disagree.

We first analyze the defendant's argument under our State Constitution, looking to federal law for guidance only. *See State v. Ball*, 124 N.H. 226, 231 (1983). Because the Federal Constitution provides no greater protection in the area of equal protection, we need not undertake a separate federal analysis. *See LeClair v. LeClair*, 137 N.H. 213, 221-22 (1993).

The equal protection provision of the State Constitution demands that all similarly situated persons be treated alike. *See State v. LaPorte*, 134 N.H. 73, 76 (1991). Therefore, the "first question in an equal protection analysis is whether the State action in question treats similarly situated persons differently." *Id.* (quotation omitted). "If the persons are not similarly situated, . . . no equal protection problem is involved." *LeClair*, 137 N.H. at 222 (quotation omitted).

■ The right to have a fair and impartial jury determine guilt or innocence is "a fundamental precept of our system of justice." *State v. VandeBogart*, 136 N.H. 107, 110 (1992). However, while the right to an impartial jury enjoys constitutional protection, "the manner in which *voir dire* is conducted is wholly within the sound discretion of the trial judge." *State v. Bone*, 131 N.H. 408, 412 (1989) (quotation omitted). Traditionally, the trial court, not counsel, conducts jury *voir dire* in all cases except capital cases. *See id.* The exception is premised on the fact that in capital cases the jury determines whether a sentence of death will be imposed. "A juror who declares that he cannot exercise judgment upon that question is not indifferent and should not be permitted to serve." *State v. Comery*, 78 N.H. 6, 11 (1915).

In the last twenty-five years, trial courts have routinely extended sequestered, individual *voir dire* to first degree murder cases where the State does not seek the death penalty. *See* 2 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 916, at 390 (1997). The nature of a charge of first degree murder raises a concern that the jury will assume that a guilty verdict results in a sentence of death or life imprisonment. Thus, as in capital cases, a jury's ability to exercise impartiality may be affected by considerations beyond guilt or innocence. These concerns warrant the use of individual *voir dire*.

■ The same concern for jury impartiality simply is not present in this case. The jury had no knowledge of what sentence the defendant faced; nor did it participate in the sentencing process. *See* RSA 632-A:10-a, III. Further, concern over juror fitness based upon a common assumption that the crime charged will result in death or a life sentence is also not present here. Therefore, a defendant charged with aggravated felonious sexual assault is not similarly situated with a defendant charged with capital or first degree murder. Accordingly, no equal protection problem exists. *See LeClair*, 137 N.H. at 222.

## II

The defendant next argues that the trial court erred in denying his pretrial motion for an *in camera* review of the victim's DCYF confidential records. Based on his claim that the DCYF report could explain inconsistencies in the victim's statements against him, the defendant contends that the trial court misapplied the *Gagne* standard. *See Gagne*, 136 N.H. at 105. We agree.

"[I]n order to trigger an *in camera* review of confidential or privileged records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense." *Id.* "The threshold showing necessary to trigger an *in camera* review is not unduly high. The defendant must meaningfully articulate how the information sought is relevant and material to his defense." *State v. Graham*, 142 N.H. 357, 363 (1997).

In *State v. Taylor*, 139 N.H. 96, 98 (1994), the defendant asserted that he had reason to believe the victim was interviewed by DCYF. The defendant, however, presented nothing more than this general assertion as justification for an *in camera* review of DCYF files. *See id.* Unlike in *Gagne*, where we allowed *in camera* review, the defendant in *Taylor* failed to offer "specific arguments concerning relevant evidence that, according to information obtained independently by counsel, may have been contained in the DCY[F] file." *Id.* Affirming the trial court's denial of the defendant's motion for *in camera* review, we held that "[a]t a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by information in the DCY[F] file." *Id.* at 99.

As in *Gagne* and *Taylor*, the defendant's argument begins with the general assertion that the victim was interviewed by DCYF. Unlike the defendant in *Taylor*, however, the defendant did not rest on this general assertion. Based upon the "Law Enforcement Letter" written by Enright and information provided by the victim's mother, defense counsel argued that a reasonable probability existed that the DCYF records may contain information concerning: (1) how the victim's perception of the incidents changed from consensual to non-consensual; (2) why the victim recalled additional incidents that allegedly occurred prior to her sixteenth birthday after her first meeting with Detective Gallagher; (3) whether the victim's various interviews with the police contained inconsistencies; and (4) whether, and to what extent, DCYF counselors prepared the victim. In his motion for reconsideration, the defendant further articulated these specific arguments.

■ Applying *Gagne* and its progeny, we find that the defendant established a reasonable probability that the DCYF file contained information that may have been material and relevant to his defense. *See Gagne*, 136 N.H. at 105. The defendant presented at least four specific arguments "concerning relevant evidence, that, according to information obtained independently by counsel, may have been contained in the DCY[F] file." *Taylor*, 139 N.H. at 98; *see also Gagne*, 136 N.H. at 106. Thus, we remand for the trial court to conduct an *in camera* review of the victim's DCYF file. If on remand the trial court determines that the records contain evidence that would have been "essential and reasonably necessary to the defense at trial . . . the court should order a new trial unless it finds that the error of not admitting the evidence in the first trial was harmless beyond a reasonable doubt." *Graham*, 142 N.H. at 364.

## III

The defendant next argues that the trial court applied the wrong standard of proof in determining whether he had two prior convictions for sentencing purposes. In accordance with RSA 632-A:10-a, III, the prior convictions triggered a sentence enhancement to life imprisonment without parole. The defendant also argues that, regardless of what standard of proof is utilized, the evidence was insufficient to prove his identity as the person previously convicted.

Generally, the facts supporting a sentence need not be proved beyond a reasonable doubt. *See, e.g., State v. Gosselin*, 117 N.H. 115, 122 (1977). In *Almendarez-Torres v. United States*, 523 U.S. 224, 228-48 (1998), the United States Supreme Court essentially held that a sentence enhancing statute based, in part, on prior convictions, is merely a penalty provision and does not create a separate crime or constitute a separate element of a crime. Therefore, a prior conviction need not be alleged in the indictment, *see id.* at 227, and generally need not be proved beyond a reasonable doubt as part of the crime charged. The Court, however, expressed no opinion "on whether some heightened standard of proof might apply to sentencing determinations that bear significantly on the severity of sentence." *Id.* at 248.

The defendant argues that due process demands "something more than a proof beyond a probability of the prior convictions, even if they are considered to be enhancement factors rather then elements of the offense." He contends that proof beyond a reasonable doubt is the appropriate standard in this case. We agree.

The first step in a due process analysis is to "determine whether the challenged procedures concern a legally protected interest."

*Petition of Bagley*, 128 N.H. 275, 282-83 (1986). Here, the defendant faces a sentence of life without parole. Our constitution expressly recognizes the right to due process before imprisonment as a legally protected interest. *See* N.H. CONST., pt. I, art. 15. Therefore, we must consider whether proof of prior convictions beyond a reasonable doubt is required to safeguard the defendant's due process rights under the sentencing provisions of RSA 632-A:10-a, III. *See Bagley*, 128 N.H. at 283. This consideration entails weighing the following factors:

> (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirements would entail.

*Id.* at 285.

The private interest affected here is the deprivation of liberty. With the exception of the death penalty, life imprisonment without parole is the most severe penalty that may be imposed in this State. Accordingly, the standard of proof applied to prior convictions for sentencing under RSA 632-A:10-a, III may dramatically affect the defendant's liberty.

Turning to the second prong, a possibility exists that a defendant may be erroneously sentenced to life imprisonment without parole under the current standard of proof pursuant to RSA 632-A:10-a, III. The gravity of the potential sentence renders any such possibility a significant risk that must be minimized by a heightened burden of proof.

We last consider the government's interest. We recognize its desire to avoid expanded hearings for sentencing and to minimize "fiscal and administrative burdens on the court, the prosecution, and law enforcement officials." *In re Eduardo L.*, 136 N.H. 678, 688 (1993). The government also has an interest in protecting its citizens from repeat offenders. A heightened standard of proof under RSA 632-A:10-a, III, however, would not dramatically interfere with these legitimate concerns. Indeed, a variety of information, *i.e.*, fingerprint cards, booking photographs, FBI reports, social security number, and other identifying information is readily available to prosecutors. This information can be presented to the trial court efficiently and effectively to ensure, beyond a reasonable doubt, that

the defendant was convicted of two prior aggravated sexual assaults and should be permanently removed from society.

■ The analysis of these three factors supports our conclusion that the Due Process Clause of the New Hampshire Constitution requires proof beyond a reasonable doubt of prior convictions used to enhance a defendant's sentence to life without parole under the provisions of RSA 632-A:10-a, III.

Accordingly, we vacate the defendant's sentences on all counts, since the sentence of life imprisonment without parole may have affected the trial court's decisions in imposing the other sentences. If after *in camera* review of the DCYF records the trial court does not order a new trial, then a new sentencing hearing shall be held consistent with this opinion. Therefore, we do not reach the defendant's sufficiency of the evidence claim.

Although the defendant raised other issues in his notice of appeal, the issues were not briefed and we deem them waived. *State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed in part; reversed in part; and remanded.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J, concurred; HORTON, J. retired, specially assigned under RSA 490:3, concurred.