Belknap
No. 2002-790

THE STATE OF NEW HAMPSHIRE

v.

ERNEST T. MADORE, JR.

Argued: September 17, 2003
Opinion Issued: November 7, 2003

*Peter W. Heed,* attorney general (*Jonathan V. Gallo,* assistant attorney general, on the brief and orally), for the State.

*Shuchman, Krause & Vogelman, P.L.L.C.,* of Exeter (*Lawrence A. Vogelman* and *Joel T. Shaw* on the brief, and *Mr. Shaw* orally), for the defendant.

BROCK, C.J. The defendant, Ernest T. Madore, Jr., was convicted of aggravated felonious sexual assault following a jury trial in Superior Court (*Perkins*, J.). *See* RSA 632-A:2, I(i) (1996). On appeal, he argues that the superior court erred in denying his motion for a mistrial, as well as his motion for discovery of the victim's counseling records. We affirm.

The jury could have found the following relevant facts. On October 18, 2001, the victim and her sister, Jennifer, went to a local Laconia bar after work. Later that night, arrangements were made for the victim to be driven home by the defendant. After leaving the bar, the victim and the defendant drove to a friend's house where they smoked marijuana. They subsequently returned to the victim's apartment.

While at the apartment, the victim, feeling intoxicated and sleepy, sat on one end of her couch, waiting for her sister to come to the apartment and meet the defendant. The defendant sat on the other end of the couch, drinking a beer and watching a movie. When Jennifer arrived, she helped her sister upstairs into her bedroom, laid her on the bed and covered her with blankets. The victim was intoxicated and fell asleep quickly.

After helping her sister to bed, Jennifer returned downstairs where the defendant remained on the couch, watching television. Approximately twenty minutes later, Jennifer left the apartment for the night, expecting that the defendant would sleep on the victim's couch. He subsequently entered the victim's bedroom and sexually assaulted her.

At trial, the victim testified concerning the details of the assault. During direct examination, she stated that after having gone to sleep, she was awakened. "I was at the bottom of my bed on my back with a big shadow over my body touching my private area." She testified that her legs were dangling over the bottom of her bed, her pajama bottoms had been removed, and she eventually crawled backwards toward the headboard to escape her assailant. She then rolled onto her stomach to flee and began holding onto the headboard. She testified that, at that point, the defendant "couldn't get his area into mine," and instead ejaculated onto her back. The defendant said, "I'm sorry . . . . I hope you don't hate me for this." She screamed, and he then grabbed his things and ran out of the apartment.

During cross-examination, defense counsel questioned the victim concerning discrepancies between her testimony on direct examination and statements she had made to police officers the morning of the assault. Specifically, defense counsel asked, "You didn't mention to [the police]

being on your back with your legs dangling over; did you?" She replied, "That was a memory that came after counseling." Both parties were then given the opportunity to conduct a *voir dire* examination of the victim outside the presence of the jury to determine whether her testimony was the result of a repressed memory.

Following *voir dire*, the defendant moved for a mistrial. Defense counsel also requested discovery of the victim's counseling records, stating, "I think given that that evidence has come out, we're entitled to try and get counseling records. I think we're entitled to a hearing if those records determine something." The State objected, arguing that the defendant had suffered no prejudice, and, therefore, no mistrial should be granted. Moreover, the State argued that the mere fact that the victim underwent counseling was insufficient to permit discovery of those records. The court agreed, and denied both motions.

We begin with the defendant's claim that the trial court erred in denying his motion for mistrial. The defendant argues that the victim's answer on cross-examination—"That was a memory that came after counseling"—constituted testimony based upon repressed memory which, pursuant to *State v. Hungerford*, 142 N.H. 110, 119 (1997), was admissible only following a pretrial reliability hearing. The defendant contends that the court's failure to afford him a *Hungerford* hearing caused him irreparable injury, entitling him to a mistrial. We disagree.

The basis for granting a mistrial is the existence of circumstances which indicate that justice may not be done if the trial continues to verdict. *State v. Dupont*, 149 N.H. 70, 80 (2003). To justify a mistrial, prejudicial testimony must be more than inadmissible, it must constitute an irreparable injustice that cannot be cured by jury instructions. *Id.* The trial court is granted broad discretion to decide whether a mistrial or other remedial action is necessary because it is in the best position to measure prejudicial impact. *Id.* Absent an unsustainable exercise of discretion, we will not overturn the trial court's decision not to grant a mistrial. *Id.* Based on the record before us, we cannot conclude that the trial court engaged in an unsustainable exercise of discretion.

At the outset, we note that the defendant's underlying assumption that the victim's testimony was inadmissible misconstrues the requirements set forth in *Hungerford*. In *Hungerford*, concerned about the influence of therapy on the recovery of memory, we concluded that "testimony that relies on memories which previously have been partially or fully repressed must satisfy a pretrial reliability determination." *Hungerford*, 142 N.H. at 119, 123. That pretrial hearing examines the reliability of such testimony,

as well as the reliability of the techniques used to facilitate the recovery of repressed memories. *See id.* at 125-26. The existence of repressed memory, however, is a necessary precursor to that hearing; only when repressed memory exists is a hearing held to determine its reliability. *See id.* at 118-19.

In the present case, following *voir dire*, the trial court found that the victim's memory was not repressed. Although the defendant accords little weight to this finding, we will uphold the trial court's findings of fact unless unsupported by the record or clearly erroneous. *State v. Brunelle*, 145 N.H. 656, 658 (2000). Moreover, "[w]e accord the trial court's rulings on evidentiary matters considerable deference," *Hungerford*, 142 N.H. at 117. "A trial court is accorded broad discretion in ruling on the admissibility of evidence, and we review the trial court's ruling under the unsustainable exercise of discretion standard." *State v. Lamprey*, 149 N.H. 364, 370 (2003) (citation omitted). Based upon the record before us, we defer to the trial court's finding and evidentiary ruling.

■ During *voir dire*, the victim explained that she had "memories that [she] was not able to write on a piece of paper 15 minutes after leaving the hospital because [she] was so upset, but there were no brand new memories." When specifically asked whether she had the memory of her feet dangling over the bed when she was taken to the police station following the assault, she stated that, "I had the memory of him hovering over my body at the end of the bed, yes." The victim further explained the omissions in her statements to police, stating that she did not recount all of the details of the incident, because she "didn't have the time or the patience or the energy after six hours of being reraped again at a . . . hospital." Based on this testimony, we conclude that the trial court's finding that no issue of repressed memory existed was amply supported by the record. This finding, then, preempted any need for a reliability hearing pursuant to *Hungerford*. Because the court's failure to conduct a pretrial hearing did not render the victim's testimony inadmissible, we conclude that the trial court did not err in denying the defendant's motion for mistrial.

We now address the defendant's contention that the superior court should have permitted discovery of the victim's counseling records. He argues that at a minimum, the court should have ordered *in camera* review of those records to determine whether they contained any evidence of repressed or recovered memories prior to denying his previous motion for a mistrial.

■ "We review a trial court's decisions on the management of discovery ... under an unsustainable exercise of discretion standard." *State v. Amirault*, 149 N.H. 541, 543 (2003). Satisfying this standard requires the defendant to "demonstrate that the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case." *Id.* Although "[t]he threshold showing necessary to trigger an *in camera* review is not unduly high[,] [t]he defendant must meaningfully articulate how the information sought is relevant and material to his defense." *State v. Graham*, 142 N.H. 357, 363 (1997); *see also State v. Gagne*, 136 N.H. 101, 105 (1992). "[A] plausible theory of relevance and materiality sufficient to justify review of the protected documents" must be offered. *Graham*, 142 N.H. at 363. "At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought." *Id.* (quotation omitted). We conclude that the trial court's decision in this case was a sustainable exercise of discretion.

At trial, defense counsel stated:

> At this point, I mean, it appears as to—from her answers and from what she says during the cross and the direct that she tells the Court today that she had all of the memories regarding what happened that day prior to going into counseling. I still at this point think I'm entitled to a mistrial. I think the defendant is entitled to a mistrial. I think her statement was—and I know she tried to explain it, but I think the statement was clear before when I asked her the question about—um—why she didn't tell them this, and she said she didn't remember it until she went to counseling.
>
> *I think given that that evidence has come out, we're entitled to try and get counseling records. I think we're entitled to a hearing if those records determine something.*

(Emphasis added.) Assuming without deciding that defense counsel's argument satisfied the requirements of *Graham* and *Gagne* by setting forth "some factual basis beyond the mere existence of counseling records," *State v. Hoag*, 145 N.H. 47, 50 (2000), we nevertheless uphold the trial court's refusal to grant *in camera* review. The specific concern offered by the defendant—that *in camera* review was needed to determine whether the victim's memory was repressed—was rendered moot by the trial court's ruling that the victim's memory was not repressed. Having already made that determination, the trial court was left with little reason to afford *in camera* review other than the defendant's general assertion

that he was entitled to counseling records. *See id.* (to trigger *in camera* review, defendant must assert factual basis beyond the mere existence of counseling records); *see also State v. Taylor*, 139 N.H. 96, 98 (1994). Therefore, we conclude that the trial court did not err in denying the defendant's motion for discovery.

*Affirmed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.