**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0070, <u>State of New Hampshire v. Genaro Claussells-Vega</u>, the court on November 15, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The defendant, Genaro Claussells-Vega, appeals his convictions on one count of aggravated felonious sexual assault (AFSA), <u>see</u> RSA 632-A:2, I(m) (2016), one count of second degree assault by strangulation, <u>see</u> RSA 631:2, I(f) (2016), one count of kidnapping, <u>see</u> RSA 633:1, I (2016), two counts of domestic violence simple assault, <u>see</u> RSA 631:2-b, I(a) (2016), and one count of criminal threatening, <u>see</u> RSA 631:4, I(d) (2016).  The defendant argues that the Superior Court (<u>Nicolosi</u>, J.) erred by admitting the victim's testimony that the defendant held anti-police views and by declining to conduct an <u>in camera</u> review of the victim's counseling records dated after the charged offenses.  We affirm in part, reverse in part, and remand.

I

The pertinent facts are as follows.  The defendant and the victim met online in December 2020 and began a romantic relationship.  The defendant was then living out of state, but soon moved in with the victim in her apartment in New Hampshire.  The victim's family lived downstairs.  According to the victim, problems developed in their relationship.  She alleged that, as the relationship progressed, the defendant became more violent and threatened to hurt her family if she made him leave her apartment.  The victim previously worked as a corrections officer and her brother was an out-of-state police officer, which were law enforcement roles that the defendant disparaged.

The victim underwent surgery in early 2021.  The charged conduct began several weeks later on the night of March 22, 2021, at which point the victim was still recovering from her surgery.  The victim first reported the assaults to her doctor on March 24, 2021, during an office visit for follow-up care regarding her prior surgery.  While with her doctor and outside the presence of the defendant, the victim disclosed that the defendant had sexually assaulted her and held her hostage in her apartment.  The victim waited to report the assaults to her doctor because she knew it would be her first opportunity to be away from the defendant.  She described to her doctor the defendant's close

monitoring of her whereabouts and phone use as well as his threats to break her phone. She also wrote a letter to her brother, put postage on the letter, and gave it to the doctor's office to mail. In the letter, she expressed fear of the defendant's retaliation against her or law enforcement because he told her on multiple occasions that he was "anti-police and government."

The victim asked that her doctor admit her to the hospital and allow the defendant to drive her there so as not to raise his suspicion. However, contrary to the victim's understanding, the hospital's COVID-19 policy had recently changed, and the defendant was permitted to visit her until 8:00 p.m. Disgruntled with the hospital admission, the defendant told her he would return the next morning to take her home "no matter what." After he left, the victim explained the situation to a nurse, who contacted the police. At approximately 8:50 p.m., the police interviewed the victim at the hospital. The defendant was later arrested and charged with four counts of AFSA (including two alternative theories), two counts of domestic violence simple assault, and one count each of kidnapping, second degree assault, criminal threatening, and obstructing the report of a crime.

In September 2021, the defendant filed a motion for, inter alia, in camera review of the victim's counseling records dated after the alleged assaults. The defendant emphasized that "a central issue at trial will be the credibility of [the victim]" and that, according to discovery, she attended counseling both before and after the alleged assaults. Specifically, the defendant alleged that discovery showed that the victim was "'working intensively with her therapist' because the alleged assaults have exacerbated her previous [posttraumatic stress syndrome (PTSS)] and anxiety symptoms." Therefore, the defendant contended that "[i]t is reasonable to believe that she made statements to a counselor regarding the alleged assaults after March 25, 2021." He also asserted that because she made inconsistent statements about her relationship with the defendant and named her home life as a "life stressor[ ]" to health care providers, it is reasonable to believe she also discussed such subjects in counseling.

The State objected to the defendant's motion, specifying that the victim's positive statements to medical providers about her relationship took place before the alleged assaults and were made in a medical context. The State argued that, while the defendant "will likely seek to impeach [the victim] with these purported inconsistencies," they "do[ ] not trigger an in camera review to try and find 'more' based on defense counsel's speculation that more statements exist."

The trial court granted the defendant's motion "as to [the victim's] counseling records from December 30, 2020 through March 24, 2021 from [her counseling provider]." On November 10, 2021, the trial court issued an order

explaining that it had received correspondence from her counseling provider indicating that the victim "had not been seen at its office between the dates of December 30, 2020 through March 24, 2021.  No records, therefore, were produced."

In October 2021, the defendant filed a motion in limine to exclude, inter alia, testimony that the defendant harbored anti-police, anti-government beliefs.  The defendant argued that this evidence is irrelevant and must be excluded as improper character evidence, as it would "serve no purpose at trial other than painting [the defendant] as a dangerous, violent individual, and that he acted in accordance with these traits during the incidents alleged."  See N.H. R. Ev. 401, 404(a).  The defendant further asserted that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  See N.H. R. Ev. 403.

The State objected to the defendant's motion.  While the State conceded that the challenged evidence "is at least somewhat prejudicial," it argued that such prejudice is outweighed by its high probative value in helping the jury understand the particular circumstances of this relationship as well as why the victim feared the defendant and waited to report the sexual assaults until she was no longer in his presence.

Upon request of the trial court after a hearing on the motion, the State provided the court with copies of relevant police reports.  These police reports indicated that the victim "kept saying how scared she was for her own safety and the concern she had for her family if [the defendant] got released, citing the numerous threat[s] he had made to her in the past."  She reported that the defendant is very "anti-police" and "anti-government" and that he had referred to law enforcement as "pigs" and "oppressors."  (Capitalization omitted.)  The victim explained that the defendant "is extremely combative with law enforcement and he has made statements saying he will kill any cop he sees and will succumb to suicide by cop if he has to."  She was concerned because she kept two pistols in a small safe in her apartment, and the defendant "repeatedly asked her for the combination to the safe so that he could access the guns, but she refused to tell him as she did not want anyone to get hurt by him."

The trial court denied the motion in limine with respect to the challenged "anti-police" testimony.  The court agreed with the State's objection that the evidence "is relevant to show the [victim's] fear of the defendant and her concern for law enforcement if she reported, and that her delay in reporting the defendant's assaultive and other criminal conduct and the ultimate plan she implemented to report to her medical provider was causally related to this fear."  The court noted that "[a]n obvious question at trial will be why, if the

events occurred as [the victim] described, she did not call the police or seek assistance from her family, who lived in the apartment below." The court found this evidence "highly relevant to the alleged victim's state of mind and the decisions she made during the alleged incident about reporting" as well as "highly probative of credibility." The court did "not find it cumulative of other evidence" and determined that this "[a]nti-government, anti-police sentiment is not so inflammatory that the jury will be side-tracked or unable to follow a limiting instruction, which the Court will give absent objection by the defendant." Thus, the challenged testimony was deemed admissible.

After a four-day trial in November 2021, the jury found the defendant guilty of one count of AFSA, one count of second degree assault, one count of kidnapping, two counts of domestic violence simple assault, and one count of criminal threatening. This appeal followed.

II

On appeal, the defendant argues that the trial court erred by admitting the victim's testimony that the defendant held anti-police views and by refusing to conduct an <u>in camera</u> review of the victim's counseling records dated after the alleged conduct. We review the trial court's evidentiary rulings for an unsustainable exercise of discretion and reverse only if the court's decision was clearly untenable or unreasonable to the prejudice of the defendant's case. <u>State v. Clark</u>, 174 N.H. 586, 589 (2021). We consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. <u>Id</u>.

The defendant first argues that the trial court erred by allowing the State to elicit the victim's testimony that he held anti-police views. Although the defendant concedes that the victim's fear was relevant to the timing and manner of her initial report of the assaults, he asserts that this evidence was cumulative to prove her fear and carried "a substantial risk of unfair prejudice because it depicted [the defendant] in a very negative light, as one who harbors anti-social views." The defendant specified during oral argument that he does not challenge the admission of the victim's testimony that the defendant said he would die by "suicide by cop" or that he had threatened to harm police officers; rather, the defendant only challenges the admission of the "abstract" anti-police views.

Under Rule 401, evidence is relevant if it has "any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." <u>N.H. R. Ev.</u> 401. Under the balancing test of Rule 403, we examine whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice to the defendant. <u>Clark</u>, 174 N.H. at 590; <u>see</u> <u>N.H. R. Ev.</u> 403. When weighing the evidence, we

consider: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation, or inference. Clark, 174 N.H. at 590. The trial court is in the best position to gauge the impact of prejudicial testimony and what steps to take to remedy that prejudice. Id. Thus, we give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence. Id.

The trial court found that the challenged testimony was "highly relevant to the alleged victim's state of mind and the decision she made during the alleged incident about reporting," was not cumulative of other evidence, and was "highly probative" of the victim's credibility. The record supports this determination. Moreover, forcing the victim to ignore this dynamic of her relationship with the defendant when testifying about her fear and why she delayed reporting the assaults "could have infected her testimony with a level of artificiality or hesitancy, potentially detracting from her credibility in the eyes of the jury." Id.

In addition, the record supports the trial court's determination under Rule 403 that the probative value of the challenged evidence is not substantially outweighed by the danger of unfair prejudice to the defendant. Under these circumstances, we cannot conclude that the victim's testimony that the defendant held anti-police views was likely to have any greater emotional impact on the jury than her testimony that he was willing to "die by '[s]uicide by [c]op,'" that he threatened to harm police officers, or her descriptions of the violent sexual assaults. See State v. Tabaldi, 165 N.H. 306, 323 (2013) (reasoning that "[i]n the context of this case, we cannot say that a photograph of the defendant holding fanned-out paper currency in his hand was likely to have any greater emotional impact on the jury than the other evidence tending to show that he regularly sold drugs"). Thus, while the challenged evidence may have been prejudicial, we cannot conclude that it was "so inflammatory as to substantially outweigh its probative value." Id. (quotation omitted). Therefore, we conclude that the trial court did not unsustainably exercise its discretion in admitting the victim's testimony that the defendant held anti-police views.

III

We next turn to the defendant's argument that the trial court erred in failing to conduct an in camera review of counseling records dated after the assaults. The defendant contends that the court's refusal to conduct an in camera review violated his constitutional due process rights. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V and XIV. We first address the defendant's claim under the State Constitution. State v. Ball, 124 N.H. 226,

5

231-33 (1983). Because the defendant prevails under the State Constitution, we need not analyze his argument under the Federal Constitution. See State v. Hoag, 145 N.H. 47, 48 (2000).

To determine whether the privilege between a patient and mental health provider must cede to due process considerations such that privileged records must be disclosed to a criminal defendant, the trial court must balance the confidentiality of such records against the defendant's right to obtain evidence helpful to his defense. See State v. Girard, 173 N.H. 619, 627 (2020); RSA 330-A:32 (Supp. 2022). In State v. Gagne, we held that in order to trigger an in camera review of confidential or privileged records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense. State v. Gagne, 136 N.H. 101, 105 (1992). This threshold showing is not unduly high. State v. Fiske, 170 N.H. 279, 285 (2017). At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought. Id. Although a defendant is not required to state the precise nature of the information sought, he must provide the court with a logical factual basis for his request, based on information independently obtained, that the information sought may yield relevant evidence. Id. If the defendant makes this showing, then the trial court, in reviewing the records, must determine if material and relevant evidence is in fact contained in the records. Girard, 173 N.H. at 628.

In his motion for in camera review, the defendant asserted, based on discovery provided by the State, that: (1) the victim likely attended counseling both before and after the alleged assaults; (2) because the victim was working with a counselor due to the alleged assaults exacerbating her prior mental health symptoms, it was reasonable to believe she made statements to a counselor regarding the alleged assaults; and (3) because the victim previously made inconsistent statements regarding her "home life and relationships," it was reasonable to believe her counseling records might contain additional statements. Specifically, the defendant asserted that, based on discovery, the victim told a social worker one month prior to the assaults that she depended on the defendant for assistance with daily activities and that he was "a protective factor in her life," yet later told police that he had "always been controlling and possessive of her." (Quotation omitted.) He argued in his motion that "[w]ithout a review of the records, there is no way to know how she was characterizing her life to her counselor and whether it was consistent with her statements to police," which would speak to her credibility.

We conclude that the defendant's showing of inconsistent statements coupled with the reasonable probability that the victim discussed the defendant's alleged conduct in counseling is sufficient, as a matter of law, to trigger an in camera review of the victim's counseling records dated after the

assaults.  See Gagne, 136 N.H. at 105 ("the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense").  The threshold showing for in camera review is "not unduly high," and the defendant's theory here is "based on more than bare conjecture."  Fiske, 170 N.H. at 285; see also Hoag, 145 N.H. at 49 (concluding that "the defendant's theory that the victim may have made additional exculpatory statements in counseling is 'based on more than bare conjecture'" where the defendant showed that the victim made inconsistent statements regarding penetration).

The State contends that "because the victim's alleged inconsistent statements do not speak to an essential or material element of any of the offense[s] brought against the defendant, the trial court was not required to review the victim's counseling records in camera based on a general assertion of inconsistent statements alone."  However, we have previously observed in the in camera review context that "records containing general credibility evidence may be material and relevant thereby requiring disclosure."  Girard, 173 N.H. at 629.  Moreover, the defendant did not provide a "general assertion of inconsistent statements," as the State claims; rather, he pointed to specific contradictory statements by the victim that were disclosed in discovery.  By explaining the connection between these statements and the role that the victim's credibility was anticipated to play at trial, the defendant "meaningfully articulate[d] how the information sought is relevant and material to his defense."  State v. King, 162 N.H. 629, 632 (2011).

The State further argues that the defendant failed to trigger in camera review because we have previously determined that "[w]hen a trial court knows nothing more than that a victim has spoken with [a provider], the defendant has not established a reasonable probability that the [provider's] records contain information that is material and relevant to the defense."  State v. Taylor, 139 N.H. 96, 98 (1994).  However, here the defendant did assert more than merely that the victim spoke with a counselor — he showed a reasonable probability, based on discovery, that the victim was in counseling in part "because the alleged assaults have exacerbated her previous PTSS and anxiety symptoms."  Accordingly, we reverse the trial court's denial of the defendant's motion with respect to counseling records dated after the alleged conduct and remand.

On remand, the trial court should direct the appropriate treatment provider or providers to provide the victim's counseling records for in camera review.  The trial court should then review the confidential records in accordance with the standard set forth in Girard.  If the trial court concludes that the records do contain evidence that should have been disclosed to the defense, the court may release that evidence to the parties with any necessary protective order, taking into account the victim's rights under Part I, Article 2-b

7

of the New Hampshire Constitution and RSA 21-M:8-k (Supp. 2022), if any. If the court releases any evidence to the parties, the court should then provide the parties with an opportunity to make arguments as to whether a new trial is warranted. Cf. State v. Graham, 142 N.H. 357, 364 (1997) (if records contain evidence that should have been disclosed, the trial court "should order a new trial unless it finds that the error of not admitting the evidence in the first trial was harmless beyond a reasonable doubt").

Any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived. Clark, 174 N.H. at 595.

Affirmed in part; reversed in part; and remanded.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**