NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2016-0137


THE STATE OF NEW HAMPSHIRE

v.

JEREMY M. FISKE

Argued: May 11, 2017
Opinion Issued: September 21, 2017


Joseph A. Foster, attorney general (Sean P. Gill, assistant attorney general, on the brief and orally), for the State.


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


LYNN, J. Following his convictions on eight counts of aggravated felonious sexual assault (AFSA), see RSA 632-A:2 (2016), and one count of possession of child pornography, see RSA 649-A:3, I(a) (2016), the defendant, Jeremy M. Fiske, appeals, arguing that the Superior Court (Delker, J.) erred in: (1) denying his motion for in camera review of the counseling records of the victim; (2) allowing the State to present evidence that he admitted to having "perversion addictions"; (3) denying his motion to dismiss the child pornography indictment; and (4) informing the jury that certain indictments

alleged alternative means of committing the same offense but then imposing separate sentences on each of the alternative charges.  Finding no error, we affirm.

I

The pertinent facts are as follows.  The victim was born in 1996.  The victim's mother (the mother) married the defendant in 2005.  Thereafter, the defendant, the mother, the victim, and the victim's brother lived together in a four-bedroom house in Raymond.

The defendant had a son with the mother in November 2006.  Shortly thereafter, the couple's marriage began to deteriorate.  Around this time, the victim suffered from frequent chronic migraines, sometimes as many as three or four per week.  When stricken, she would retreat to her bedroom.  The defendant often followed her, bringing her medicine or ice packs.  His visits gradually grew longer, and he began to give the victim massages.  Eventually, the massages extended to her breasts and vagina.

Several months after this behavior started, the defendant began forcing the victim to participate in sexual acts, usually three or four times per week.  These forced acts, which continued for roughly two years, included inappropriate touching, masturbation, and fellatio.  During this time, the defendant photographed the victim wearing lingerie, bathing suits, and other clothes — some of which belonged to the mother — that he had coerced her to wear.  At least once, the defendant also photographed the victim with a dildo in her mouth.  Occasionally, the defendant coerced the victim to watch videos depicting him engaging in sexual activity with the mother, while he compared the mother's and the victim's sexual performances.  The assaults ended in 2010, when the victim was fourteen.  By that time, the victim was "finally kind of able to have the courage to say no more" and minimized the time she spent with the defendant.  However, the victim did not tell the mother of the assaults at that time, because the defendant told her "that no one would understand and that no one would believe [her]."

In 2012, the mother began to suspect that the defendant was having an affair.  After confirming the affair, she accessed the defendant's cell phone and discovered a picture of the victim that focused on her cleavage.  The victim appeared to be between fourteen and sixteen years old at the time the picture was taken.  The mother confronted the defendant by e-mail about the picture, asking him if he "fantasize[d]" about the victim or "tried to act on those fantasies."  The defendant admitted that the victim had "nice cleavage" and that he "pick[ed] on her about [the cleavage] at time[s]," but denied that anything had happened between them.  He admitted that it was inappropriate, but said that "its [sic] hard to not notice when you are the one talking about [the cleavage] too.  I already admitted [sic] I have perversion addictions."  The

2

mother asked the defendant numerous times whether he discussed the picture with his counselor; the defendant said that he had never done so.

In December 2012, after she had become involved in a serious relationship with a boyfriend, the victim disclosed to him that she had been sexually assaulted by the defendant, but told him not to mention it to anyone else. In October 2014, after the defendant had moved out of the house in Raymond, the victim told the mother about the defendant's sexual assaults. The mother immediately reported the assaults to the police and informed the defendant that she had done so; he responded by asking whether the police were coming soon.

In November, the police executed search warrants at the house in Raymond and at a house in Hampton where the defendant was then living. They obtained several items of women's clothing, including four dresses, a skirt, several shirts, two bathing suits, a bikini, and a thong bottom. The victim later identified these items as clothing that the defendant had made her wear.

The police seized the defendant's laptop computer as well. Subsequent forensic examination of it revealed that "File Shredder," a program designed to "destroy the remains of a deleted file" had been used only days before the search. Despite that, the police found approximately 100 thumbnail images, which were remnants of the full-size images that had been deleted. Several of the images depicted the victim lying in her backyard, and some focused on her buttocks.

Two thumbnail images depicted the victim, when she was roughly eleven or twelve years old, with her "mouth around a dildo." Examination of the computer by the State's expert revealed that these two images had been "modified" on September 13, 2007. The expert testified that this was the last date when the images "got touched somehow" on the computer, but that he could not determine what occurred with respect to the images on that date. He explained that the date could reflect the date the images were loaded onto the computer, deleted from the computer, or changed in some way. The expert also testified that "[m]ost people have no idea" that for each full-size image file on a computer a separate thumbnail file also exists. The police also recovered a video of the defendant and the mother engaging in sexual activity.

In April 2015, the defendant was charged with four counts of pattern AFSA, five counts of AFSA involving discrete acts, and one count of possession of child sexual abuse images. Prior to trial, the State moved in limine to admit the e-mail in which the defendant stated that he had "perversion addictions." After a hearing, and over the defendant's objection, the court granted the motion, finding that the e-mail exchange was relevant to show that the defendant acted "under circumstances that could reasonably be construed for

3

purposes of sexual arousal or gratification," and to corroborate the victim's testimony. The defendant moved for production of the victim's counseling records for in camera review, arguing that the records would reveal that the victim did not disclose the assaults to her counselor, which would be relevant to the case. The State objected, and the court denied the motion.

The defendant also moved to dismiss the child pornography indictment on the ground that "simulated fellatio does not fall under the definition of simulated sexual intercourse" within the meaning of RSA 649-A:2, III, and thus, does not constitute "sexually explicit conduct," an element of possession of child pornography under RSA 649-A:3. See RSA 649-A:3, I(a). The trial court denied the motion, finding that "'sexually explicit conduct' includes oral intercourse and oral penetration."

At trial, after the State rested, the defendant again moved to dismiss the child pornography charge. He noted that the modified date attached to the images from September 2007 was outside of the applicable six-year statute of limitations, and that the State's expert had testified that "one of the possibilities is that that modification was a deletion of the [original] file[s]." Accordingly, the defendant argued that, because the State's evidence was insufficient to establish beyond a reasonable doubt that he knowingly possessed the images within the statute of limitations, the charge should be dismissed. The State objected, and the trial court denied the defendant's motion, finding that "the jury could conclude that the actual image[s] . . . existed up to 2014."

Near the end of the trial, the court, referring to the numerous charges, instructed the jury that some of them were "alternative versions" of the same offense. It stated, in relevant part:

> Now, in this case, some of the charges of aggravated felonious sexual assault are alternative versions of the same crime. So more specifically, some of the charges that allege a pattern of sexual assault and other charges allege individual acts of sexual assault; and the charges that allege the . . . type of conduct as a pattern and as an individual act are alternative versions of the same crime, even – but they do have different elements that the State has to prove.
>
> So the law allows the State to charge crimes in the alternative, and as with the other offenses in this case, you should consider each of the charges separately and decide whether the State has proven . . . each element of the offense beyond a reasonable doubt. So if you find that the State has proven all of the elements of both versions of the crime beyond a reasonable

4

doubt, the Defendant will only be sentenced on one of them because both charges are based on the same underlying conduct.

The defendant was convicted on all but one of the charged offenses, and the court ultimately imposed sentences on each of the convictions.[1]  This appeal followed.

II

On appeal, the defendant first argues that the court erred by denying his motion for in camera review of the victim's counseling records.  He notes that the victim was in counseling during the period that the defendant was accused of sexually assaulting her, and that, had she made any sexual assault allegations to her counselor, the counselor would have been required by law to report any such allegations to law enforcement.  See RSA 169-C:29, :30 (2014) (stating that any "psychiatrist, . . . school counselor, social worker . . . or any other person having reason to suspect that a child has been abused or neglected" must immediately make an oral report to the Department of Health and Human Services).  Because no such reports were ever made, the defendant deduces that the victim never told her counselor about the alleged abuse, a fact which he argues renders the truth of his defense — that the abuse never happened — more likely than it would be without that evidence.  Thus, insofar as in camera review of the counseling records could confirm that the victim never made such allegations, the defendant argues that the court should have granted his motion.

"We review the trial court's decision under our unsustainable exercise of discretion standard."  State v. Eaton, 162 N.H. 190, 193 (2011).  "The defendant's request for an in camera review of the victim's counseling records is governed by State v. Gagne."  Id.; see State v. Gagne, 136 N.H. 101 (1992).  "To trigger an in camera review of privileged or confidential records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense."  Eaton, 162 N.H. at 193 (quotation and brackets omitted).  "This threshold showing is not unduly high."  Id. (quotation omitted).  "It requires the defendant only to meaningfully articulate how the information sought is relevant and material to his defense."  Id. (quotation omitted).  "At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought."  Id. (quotation omitted).  "Although a defendant is not required to state the 'precise nature' of the information sought, he must provide the court with a logical factual basis for his request, based on information independently obtained, that the

---

[1] During trial, the trial court dismissed one count of discrete AFSA sua sponte because it "seem[ed] to have all of the same elements as at least one, i[f] not multiple, other charges."

5

information sought may yield relevant evidence." Id. (quotation and brackets omitted).

We conclude that the trial court did not unsustainably exercise its discretion in declining to conduct an in camera review of the counseling records. The State never disputed that the victim did not reveal the abuse to her counselor, or that, under New Hampshire law, the counselor would have been required to report the abuse to law enforcement had she done so. Because there was no basis for believing that the counselor did not follow New Hampshire law, the defendant failed to show how an in camera review of the counselor's records would have yielded any potentially exculpatory information about the victim's non-disclosure to the counselor of which he was not already aware. Thus, insofar as the defendant's position was that the victim's failure to inform the counselor demonstrated that the abuse never occurred, and that exposure of this fact to the jury was "essential and reasonably necessary" to his defense, the defendant had all the information he needed to seek permission from the trial court to elicit the non-disclosure before the jury during his cross-examination of the victim. Thus, the defendant failed to establish that in camera review of the counseling records would in reasonable probability yield information material to his defense.

III

The defendant next argues that the trial court erred by admitting his statement that he had "perversion addictions." The defendant frames his argument under New Hampshire Rule of Evidence 403, contending that the evidence was inadmissible because it had minimal probative value and was "highly inflammatory." See N.H. R. Ev. 403. Specifically, he asserts that the admission possessed minimal probative value because it only demonstrated his mental state at the time of the charged acts, which he contends was "not in serious dispute," and was highly prejudicial because "[i]t constituted evidence that [he] was a 'perver[t]'" who would sexually assault his own stepdaughter.

"We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case." State v. Tabaldi, 165 N.H. 306, 321 (2013) (quotation omitted). In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. Id. The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. "[W]e give the trial court broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence." Id. at 323 (quotation omitted).

6

Here, we cannot say that the trial court unsustainably exercised its discretion. It found that the admission was relevant because it demonstrated that the defendant had a sexual interest in the victim's breasts; this sexual interest related directly to one of the indictments, which alleged a pattern of behavior involving the touching of the victim's breasts. Additionally, it rendered the victim's claim that she was assaulted by the defendant more credible. Considering that the defendant's defense depended on discrediting the victim, any evidence affecting her credibility — in this situation, evidence indicating that the defendant harbored a sexual interest towards her — was highly relevant.

Moreover, the evidence does not pose an overly high risk of unfair prejudice. In considering whether probative evidence is substantially outweighed by the danger of unfair prejudice, we consider several factors, including: "(1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation, or inference." State v. Kim, 153 N.H. 322, 330 (2006).

In this case, the jury was exposed to acutely graphic allegations relating to the defendant, including claims that he forced his own eleven- or twelve-year-old stepdaughter to perform fellatio on him and dress in the mother's clothes three to four times a week over several years. The testimony concerning these acts, rather than the defendant's admission to having a "perversion addiction," carried a far greater potential of impacting the jurors' emotions, appealing to their sense of outrage, and creating the impression that the defendant was a "pervert." Cf. State v. Pelkey, 145 N.H. 133, 136 (2000) (finding that admitted statement of defendant's complicity in criminal acts more severe than the charged crimes created extreme risk of unfair prejudice). In short, compared to the other evidence admitted at trial, the testimony about the defendant's "perversion addiction" was relatively tame; thus, the danger of undue prejudice was minute. Cf. id. Accordingly, we conclude that the trial court did not unsustainably exercise its discretion in admitting that evidence.

IV

The defendant contends that the trial court erred by failing to dismiss the possession of child pornography charge. Specifically, he asserts that the evidence was insufficient to prove that he "knowingly possessed" the images within the applicable six-year statute of limitations. See RSA 625:8, I(a) (2016).

"To prevail upon a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." State v. Cable, 168

7

N.H. 673, 677 (2016).  "Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt."  State v. Craig, 167 N.H. 361, 369 (2015).  "Further, the trier of fact may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom."  Id. at 369-70.

In this case, the parties do not dispute that the issue for the jury with respect to the statute of limitations was whether the defendant knowingly possessed the images on or after November 12, 2008, and that the trial court properly instructed the jury on this point.  The State's expert testified that examination of the defendant's computer showed that the images on which the indictment was based were "modified" on September 13, 2007.  The expert explained that this date reflected the last time the images "got touched somehow" on the computer, and that, while the date could be the date on which the images were deleted from the computer, it also could be the date when the images were loaded onto the computer or changed in some way.  Considering the totality of the evidence presented at trial, including particularly that (1) the September 13, 2007 "modified" date occurred during the very time when the defendant was sexually assaulting the victim, (2) even after the assaults ceased, the defendant continued to be sexually attracted to the victim, taking photographs focusing on her breasts when she was between fourteen and sixteen years old, and (3) the "File Shredder" program was run on the defendant's laptop just days before its seizure by the police, we conclude that a rational jury could have found beyond a reasonable doubt that the defendant did not delete the two images at issue until 2014, when he learned that he was under police scrutiny.  Therefore, the trial court did not err in denying the motion to dismiss.

V

As an alternative to his statute of limitations argument, the defendant also asserts that the trial court erred in failing to dismiss the possession of child pornography charge because, he contends, the behavior depicted in the images — simulated fellatio — does not constitute "sexually explicit conduct" as used in RSA chapter 649-A (2016).  See RSA 649-A:2, III.

Resolution of this issue requires us to engage in statutory interpretation.  "The interpretation of a statute is a question of law, which we review de novo."  State v. Guay, 162 N.H. 375, 383 (2011).  "In matters of statutory interpretation, we are the final arbiter[s] of the intent of the legislature as expressed in the words of a statute considered as a whole."  Id.  "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Id.  "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  State v. Breest, 167 N.H. 210, 212 (2014) (quotation omitted).  "However, we

8

will not interpret statutory language in a literal manner when such a reading would lead to an absurd result." Id. at 212-13 (quotation omitted). "Finally, we construe the Criminal Code according to the fair import of its terms and to promote justice." Id. at 213 (quotation and brackets omitted).

The defendant argues that the images found on the defendant's computer of the victim simulating oral sex with a dildo do not qualify as child pornography under RSA 649-A:3, I(a) because they are not "visual representation[s] of a child engaging in sexually explicit conduct." RSA 649-A:3, I(a). RSA 649-A:2, III defines "[s]exually explicit conduct" as:

> human masturbation, the touching of the actor's or other person's sexual organs in the context of a sexual relationship, sexual intercourse actual or simulated, normal or perverted, whether alone or between members of the same or opposite sex or between humans and animals, or any lewd exhibitions of the buttocks, genitals, flagellation, bondage, or torture. Sexual intercourse is simulated when it depicts explicit sexual intercourse that gives the appearance of the consummation of sexual intercourse, normal or perverted.

The defendant asserts that simulated fellatio is not simulated sexual intercourse because "sexual intercourse" means only the "insertion of the penis in the vagina," and because, by using a phallic-shaped object rather than an actual penis, it does not "give the appearance of the consummation of sexual intercourse." (Brackets omitted.)

We disagree. Although the traditional definition of "sexual intercourse" meant penetration of the vagina by the penis, the definition of this term in modern times, including at the time RSA chapter 649-A was last generally amended in 2008, is not so limited. See Webster's Third New International Dictionary 2082 (unabridged ed. 2002) (defining "sexual intercourse" as "1 : heterosexual intercourse involving penetration of the vagina by the penis : COITUS; 2 : intercourse involving genital contact between individuals other than penetration of the vagina by the penis." (emphasis added)).[2]

Interpreting "simulated sexual intercourse" to encompass the act of simulated fellatio also is consistent with the legislative purpose undergirding the enactment of RSA chapter 649-A; namely, to deter the "proliferation of exploitation of children through their use as subjects in sexual performances."

---

[2] We recognize that in In the Matter of Blanchflower & Blanchflower, 150 N.H. 226 (2003), we held that "[t]he plain and ordinary meaning of sexual intercourse is 'sexual connection esp. between humans: COITUS, COPULATION,'" and that "Coitus is defined to require 'insertion of the penis in the vagina.'" Blanchflower, 150 N.H. at 227 (brackets omitted). In that case, however, our inquiry was limited to an evaluation of the meaning of "adultery" within the context of divorce law. Id. at 226-27. For that reason, Blanchflower is inapplicable here.

RSA 649-A:1, I. Considering this legislative objective, we doubt that the legislature intended the possession of visual images of a child engaged in simulated fellatio, cunnilingus, or anal sex to be treated as legal, while the possession of visual images of a child engaged in simulated coitus are treated as illegal. See id.

For these reasons, we conclude that both images at issue gave the appearance of the victim engaged in "simulated sexual intercourse," which falls within the definition of "sexually explicit conduct" in RSA 649-A:2, III, and is thus proscribed by RSA 649-A:3, I(a).[3]

VI

Finally, the defendant maintains that the trial court erroneously instructed the jury that the pattern and discrete act AFSA indictments were alternative charges, and that, in the event of convictions, the defendant could only be sentenced once for each alternative charge. The defendant argues that the trial court's instruction was "particularly prejudicial" because it was wrong and "minimized the potential penalties" that he faced if convicted. The defendant did not make an objection during or after the instruction was given, nor did he raise the issue in a post-trial motion. Rather, he raises it for the first time on appeal as a claim of plain error. See Sup. Ct. R. 16-A.

"Under the plain error rule, we may consider errors not raised before the trial court." State v. Houghton, 168 N.H. 269, 273 (2015) (quotation omitted). "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." Id. (quotation omitted). "To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted). The defendant bears the burden of demonstrating plain error. See State v. Cooper, 168 N.H. 161, 168 (2015).

The State does not dispute that the first two prongs of the rule are satisfied. Yet the defendant fails to carry his burden on the final two prongs. First, his contention that the erroneous instruction "increased the likelihood that the jury would find [him] guilty of a greater number of charges" because it "encouraged the jury to treat their verdict lightly" is unsupported by any evidence. Unlike the cases cited by the defendant, the trial court's instructions, considered as a whole, did not mention the likelihood or duration of

---

[3] The defendant also argues that the trial court erred because it was "not possible to determine whether the object [was] meant to symbolize a penis or some other, non-sexual object." However, the victim testified that the item in the picture was a dildo. Thus, there was sufficient evidence for a rational juror to conclude beyond a reasonable doubt that the images depicted simulated fellatio. See Cable, 168 N.H. at 677.

incarceration or probation.  See State v. Beede, 128 N.H. 713, 715 (1986); State v. Burt, 75 N.H. 64, 66-67 (1908).  Thus, his assertion is conjectural; it is equally plausible that the trial court's instructions forced the jurors to deliberate more carefully by motivating them to ponder which of the alternative charges were most supported by the evidence, benefited the defendant by minimizing the scope of his alleged wrongdoing, or left the jury's deliberations unaffected.  Furthermore, the trial court instructed the jury at the beginning of the trial that they were "not allowed to consider the possible punishment" if they found the defendant guilty.  At the time it gave the erroneous instruction, the court also stated that the jury should "consider each charge separately and determine whether the State has proven the [d]efendant's guilt beyond a reasonable doubt" and that "the fact that you may find the [d]efendant guilty or not guilty on any one of the charges should not influence your verdict with respect to the other charges."  Because we presume that jurors follow the court's instructions, see State v. Gaudet, 166 N.H. 390, 397 (2014), we conclude that the defendant has not shown that the erroneous instruction affected his substantial rights, much less that it casts doubt on the fairness, integrity or public reputation of judicial proceedings.  Accordingly, the defendant has not carried his burden of demonstrating plain error.[4]  "[A]ny issues raised in the defendant's notice[] of appeal, but not briefed, are deemed waived."  State v. Candello, 170 N.H. ___, ___ (decided July 7, 2017) (slip. op. at 13).

Affirmed.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.

---

[4] We also reject the defendant's claim that the trial court violated his procedural due process rights.  Assuming without deciding that the defendant's argument is even preserved, the trial court did not lead any of the parties to craft their trial strategies on the assumption that the pattern and single act AFSA charges functioned as alternatives, because it did not make the erroneous statement to the jury until the conclusion of the trial.  Because the parties' trial strategies were not predicated on the court's erroneous statements, there was no due process violation.

11