NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court-Concord District Division
No. 2017-0346


IN RE SEARCH WARRANT FOR 1832 CANDIA ROAD, MANCHESTER, NEW HAMPSHIRE

Argued: March 21, 2018
Opinion Issued: June 8, 2018


Tarbell & Brodich Professional Association, of Concord (Friedrich K. Moeckel on the brief and orally), for Richard Exline.


Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.


HICKS, J. Richard Exline appeals an order of the Circuit Court (Gordon, J.) denying his motion for the immediate return of seized property on the ground that the affidavit supporting the search warrant under which the seizure occurred fails to establish probable cause. We affirm.

The relevant facts follow. In March 2017, a warrant was issued to search "any computer, computer system, mobile digital device, camera, router, wi-fi device, cellular telephone, smart phone, [and] commercial software and hardware" located at 1832 Candia Road in Manchester (Exline's residence). The warrant stated that there was probable cause to believe that the property so described was relevant to the crimes of identity fraud, see RSA 638:26 (2016), and tampering with public or private records, see RSA 638:3 (2016).

The affidavit submitted in support of the warrant application avers that, on August 5, 2016, the affiant, a state police detective, received an e-mail message from the assistant commissioner for the New Hampshire Department of Safety (DOS) regarding e-mail messages that had been received by State of New Hampshire officials and employees. The assistant commissioner was concerned that there had been a "cyber-attack."

The investigating detective met with William Joseph, the deputy director of DOS, who said that Elizabeth Bielecki, the director of DOS, had received an e-mail containing a link to a "Craigslist" post. The Craigslist post stated: "Vote No William Joseph reapointment [sic] at NH DMV." (Bolding omitted.) The Craigslist post concerned Joseph's potential August 2016 reappointment to his position as deputy director.

The e-mail message to Bielecki indicated that it had been sent from "noreply@craigslist.org" on August 5, 2016, at 12:52 p.m. The subject line of the message stated: "Vote No William Joseph reapointment [sic] at." The body of the message included a link to the Craigslist post and indicated that Bielecki had forwarded the Craigslist post to herself, using her government e-mail address. Bielecki confirmed that, in fact, she had not forwarded the post to herself, nor had she authorized anyone to use her government e-mail address.

The detective subsequently spoke with Jeffrey Oberdank, the supervisor of driver licensing, who had received a similar e-mail message containing a link to the Craigslist post. Although the body of the message stated that Oberdank had forwarded the post to himself from his government e-mail address, he had not done so and had not authorized anyone to use his government e-mail address. Ultimately, the detective discovered that 54 DOS administrators and employees had received an e-mail message containing a link to the Craigslist post. Each message appeared to have been forwarded to the recipient by the recipient himself or herself, using the recipient's government e-mail address.

The detective learned that Exline and his girlfriend might have been responsible for the Craigslist post and for forwarding it by using the e-mail addresses of DOS administrators and employees without authorization. Exline's girlfriend, a DOS employee, has had "disciplinary issues" involving Joseph and dislikes him. The detective was told that, in May 2016, Exline's business e-mail address was used to send a message to the Governor's communications director urging that Joseph resign because of poor work performance.

According to a Craigslist official, to forward a Craigslist post to oneself, an individual must enter his or her e-mail address twice — once as the e-mail address to which the post will be sent, and again as the e-mail address from which the post will be sent. The official informed the detective that Craigslist "could not provide documentation on who sent the [Craigslist] post to the 54

recipients," but that such "information could possibly be obtained from the source computer that sent the emails."

The detective later obtained information revealing that the Craigslist post originated from Exline's business e-mail address. The post had been created at approximately 12:30 p.m. and had been posted to the Craigslist website at approximately 12:46 p.m. Information also showed that Exline is the subscriber associated with the "Internet Protocol address" (IP) from which the Craigslist post originated and that the service address associated with the account is Exline's residence.

Thereafter, the search warrant was executed. Police seized four cellular telephones, two external hard drives, two laptop computers, two desktop computers, and one computer tablet from Exline's residence. Exline subsequently filed a motion for the immediate return of the seized property, which the circuit court denied. This appeal followed.

On appeal, Exline argues that, because the affidavit supporting the search warrant fails to establish probable cause, the search warrant was improperly issued and his motion for the return of his property improperly denied. He raises his arguments only under Part I, Article 19 of the State Constitution. Thus, to the extent that we rely upon federal law, we do so merely to aid our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the State Constitution requires that search warrants be issued only upon a finding of probable cause. State v. Ball, 164 N.H. 204, 207 (2012). Probable cause to search exists "if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." Id. To meet constitutional muster, affidavits must establish a sufficient nexus between the illicit objects and the place to be searched. Id. The affiant need not establish with certainty, or even beyond a reasonable doubt, that contraband or evidence of a crime will be found in a particular place. See id. "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." State v. Doe, 115 N.H. 682, 685 (1975) (quotation and brackets omitted).

Our duty as the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. State v. Letoile, 166 N.H. 269, 273 (2014). As a reviewing court, we may consider only the information that the police brought to the issuing magistrate's attention. Id.

We afford much deference to the magistrate's probable cause determination and will not invalidate warrants by reading the supporting affidavit in a hyper-technical sense. Id. "Rather, we review the affidavit in a

3

common-sense manner, and determine close cases by the preference to be accorded to warrants." Id. (quotation omitted). We apply a totality-of-the-circumstances test to review the sufficiency of an affidavit submitted with a warrant application. Ball, 164 N.H. at 207. We examine whether, given all the circumstances set forth in the affidavit, the magistrate had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found in the particular place described in the warrant. See State v. Ward, 163 N.H. 156, 160-61 (2012); see also Letoile, 166 N.H. at 273.

We review the circuit court's denial of Exline's motion for the immediate return of his property under our unsustainable exercise of discretion standard. See State v. Pessetto, 160 N.H. 813, 816 (2010); see also RSA 595-A:6 (2001).

For the purposes of this appeal, Exline does not contest that: (1) his business and residence are both located at 1832 Candia Road in Manchester; (2) he is the subscriber associated with the IP address at issue; (3) he created the Craigslist post; (4) he sent the May 2016 e-mail message to the Governor's communications director; and (5) the State "did link" his IP and business e-mail addresses to his home. Nonetheless, Exline maintains that the affidavit fails to establish probable cause because it does not demonstrate that either he or his girlfriend engaged in criminal activity. He argues that "the facts in [the] . . . affidavit show [he] created the Craigslist Post and, several months earlier, sent an e-mail to [the] . . . Communications Director for [the] former Governor," but "[t]hose are the only two facts in [the] . . . affidavit relating to . . . [his] or [his girlfriend's] actions."

Exline's focus upon whether the affidavit sufficiently connected either him or his girlfriend to the alleged crimes is misplaced. "The critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Wyoming v. Houghton, 526 U.S. 295, 302 (1999) (quotation omitted); see Doe, 115 N.H. at 685 (recognizing that "probable cause to search is not the same as probable cause to arrest"). "[A]s a constitutional matter" a search warrant "need not even name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 555 (1978).

Exline next asserts that the affidavit fails to allege conduct that could constitute "identity fraud" within the meaning of the pertinent statutes. Resolving this issue requires that we engage in statutory interpretation. We review the trial court's statutory interpretation de novo. State v. Fiske, 170 N.H. 279, 288 (2017). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. Id. at 288-89. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. at 289. We interpret legislative intent from the statute

4

as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe the Criminal Code according to the fair import of its terms and to promote justice. Id.; see RSA 625:3 (2016).

Pursuant to RSA 638:26, a person is guilty of identity fraud when he or she:

(a) Poses as another person with the purpose to defraud in order to obtain money, credit, goods, services, or anything else of value;

(b) Obtains or records personal identifying information about another person without the express authorization of such person, with the intent to pose as such person;

(c) Obtains or records personal identifying information about a person without the express authorization of such person in order to assist another to pose as such person; or

(d) Poses as another person, without the express authorization of such person, with the purpose of obtaining confidential information about such person that is not available to the general public.

RSA 638:26, I. RSA 638:25 (2016) defines "personal identifying information" to mean:

any name, number, or information that may be used, alone or in conjunction with any other information, to assume the identity of an individual, including any name, address, telephone number, driver's license number, social security number, employer or place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, credit card number, debit card number, personal identification number, account number, or computer password identification.

RSA 638:25, I.

Exline argues that the government e-mail addresses at issue are not "personal identifying information" within the meaning of RSA 638:25, I, because they, "like almost all state employees' e-mail addresses[,] are available on-line." He contends that "[t]he publication and availability of the e-mail addresses is the authorization for their use." We disagree. Although members of the public are authorized to send e-mail messages to a government e-mail address, they are not authorized to send e-mail messages from that address.

Exline next asserts that, because e-mail addresses are not included in the list of enumerated items, they are excluded from the statutory definition of "personal identifying information." Exline mistakenly asserts that the use of the word "including" in RSA 638:25, I, renders the list of "personal identifying information" in that provision "exhaustive."

In fact, the use of the word "including" means that the list is <u>not</u> exhaustive. <u>Conservation Law Found. v. N.H. Wetlands Council</u>, 150 N.H. 1, 5 (2003). Like the phrase "including but not limited to," the word "including" limits "the items intended to be covered . . . to those of the same type as the items specifically listed." <u>Id</u>. at 6; <u>see</u> <u>Kurowski v. Town of Chester</u>, 170 N.H. 307, 311 (2017) (explaining that the principle of <u>ejusdem</u> <u>generis</u> "provides that, when specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words"). The e-mail addresses at issue reveal the full name and employer of the individual who owns the e-mail address. They are, thus, sufficiently similar to the enumerated items to constitute "personal identifying information." RSA 638:25, I.

At oral argument, Exline asserted that the affidavit fails to allege conduct that could constitute "posing" within the meaning of the statute. He contended that, to "pose" as another person requires that a third party be defrauded and here, because the recipients of the forwarded Craigslist post <u>knew</u> that they had not forwarded the post to themselves, no third party was defrauded. In fact, to "pose" is defined as "to falsely represent oneself, directly or indirectly, as another person or persons." RSA 638:25, II. The statutory definition does not require that a third person be defrauded. In any event, Exline did not brief this argument, and, thus, we deem it waived. <u>See</u> <u>State v. Santamaria</u>, 169 N.H. 722, 727 (2017).

Having concluded that the affidavit sufficiently alleges conduct that could constitute the crime of identity fraud, we need not address Exline's assertions that the affidavit also fails to allege conduct that could constitute the crime of tampering with a public or private record.

Exline next argues that the affidavit fails to establish that there was a fair probability that evidence of the crime of identity fraud would be found at his residence and in the items seized because, at best, it demonstrates only that his IP and e-mail addresses were used for the lawful activities of creating the Craigslist post and sending the May 31, 2016 e-mail to the Governor's communications director. Exline's argument is unpersuasive. Based upon the totality of the circumstances, and viewing the affidavit in a common-sense manner, <u>see</u> <u>Letoile</u>, 166 N.H. at 273, we conclude that the magistrate had a substantial basis for finding probable cause to search Exline's residence for the objects seized.

6

The criminal activity alleged concerns "recording" an e-mail address belonging to another person, without that person's authorization, in order to pose as that person. See RSA 638:26, I(b). The affidavit avers that this activity occurred when someone entered the e-mail addresses of the DOS administrators and employees at issue, without their authorization, as both the e-mail address from which the message originated and the e-mail address to which the message would be sent. By doing this, the person made it appear that the recipient forwarded to himself or herself the link to the Craigslist post when, in fact, the recipient had not done so. Because Exline does not argue otherwise, we assume without deciding that entering an e-mail address constitutes "recording" it for the purposes of RSA 638:26, I(b).

The affidavit alleges facts establishing that Exline's e-mail and IP addresses were used to create and post the Craigslist post. Indeed, Exline concedes these facts on appeal. The affidavit also alleges facts sufficient to allow the common-sense inference that Exline's e-mail and IP addresses were used to enter the e-mail addresses of the DOS administrators and employees at issue, without their authorization, in order to make it appear that they forwarded to themselves the Craigslist post.

According to the affidavit, the Craigslist post was created on August 5, 2016, at 12:30 p.m. and was posted to the Craigslist website at 12:46 p.m. The affidavit avers that the e-mail message to Bielecki was sent on August 5 at 12:52 p.m. The temporal proximity between when the Craigslist post was posted to the Craigslist website and when the e-mail message to Bielecki was sent supports the common-sense inference that the same IP and e-mail addresses were used to create the Craigslist post and to send the e-mail message to Bielecki. The May 2016 e-mail to the Governor's communications director, which originated from Exline's e-mail and IP addresses, and the fact that Exline's girlfriend is known to dislike Joseph because of "disciplinary issues," further support the inference that Exline's e-mail and IP addresses were used to enter the e-mail addresses of the DOS administrators and employees at issue, without their authorization, in order to make it appear that they forwarded the Craigslist post to themselves when, in fact, they had not done so. Accordingly, based upon the totality of these circumstances, we conclude that the affidavit afforded the magistrate a substantial basis for believing that there was a fair probability that Exline's residence and the objects seized contained evidence of the crime of identity fraud.

For all of the above reasons, therefore, we cannot say that the circuit court unsustainably exercised its discretion by denying Exline's motion for the immediate return of his property.

Affirmed.

LYNN, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.