NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2020-0364

THE STATE OF NEW HAMPSHIRE

v.

RICHARD RACETTE

Argued: February 10, 2022
Opinion Issued: April 26, 2022

John M. Formella, attorney general (Zachary L. Higham, assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J. The defendant, Richard Racette, appeals his convictions, following a jury trial in the Superior Court (St. Hilaire, J.), on four pattern counts of aggravated felonious sexual assault (AFSA).  See RSA 632-A:2, III (2016).  He argues that the trial court erred by: (1) barring cross-examination about a witness's prior statement; and (2) failing to dismiss one of the indictments for insufficient evidence.  We conclude that the trial court erred by

barring cross-examination about the witness's prior statement and that the error was not harmless beyond a reasonable doubt.  We further conclude that the trial court committed plain error by failing to dismiss one of the indictments for insufficient evidence.  Accordingly, we reverse and remand.

## I. Facts

The jury could have found the following facts.  In September 2016, the defendant began residing in an apartment with the complainant, who was under the age of thirteen, and the complainant's mother, whom he had known for over a decade.  The complainant's mother asked the defendant to move into the apartment to assist with the rental payments.  The defendant occupied one of the bedrooms, and the complainant and her mother shared another bedroom.  The defendant moved out of the apartment in February 2017, but returned for the month of April 2017.  Thereafter, the defendant moved to a different residence in another town.

In July 2017, the defendant began encouraging the complainant's mother to move into his new residence with the complainant.  The mother agreed and informed the complainant of her plan to move.  Shortly thereafter, the complainant disclosed to the police that the defendant had repeatedly sexually assaulted her while he resided at the apartment.  The following week, the complainant was interviewed at the Child Advocacy Center (CAC) about her allegations.  The defendant was subsequently indicted on four pattern counts of AFSA.  See RSA 632-A:2, III.  The indictments alleged that the defendant engaged in patterns of sexual assault by touching the complainant's genitals, breasts, and buttocks, and by attempting to engage in sexual penetration with the complainant.

Prior to trial, the defendant moved for in camera review of certain confidential counseling and DCYF records pertaining to the complainant's family.  The trial court granted the motion with respect to the DCYF records, but denied it with respect to a number of the family counseling records.  Thereafter, the court reviewed the DCYF records and ordered the disclosure of some of the confidential records.

At trial, the complainant testified that, when the defendant resided at the apartment, he repeatedly entered her bedroom while she was sleeping and touched her breasts, buttocks, and genitals.  The complainant testified that this conduct began about a month after the defendant moved into the apartment and occurred "on most nights."  According to the complainant, when these assaults occurred, her mother was sleeping on the couch.  The complainant also testified that "[s]ometimes" the defendant attempted to engage in sexual penetration with her.  The complainant stated that, on those occasions, she kicked and pushed the defendant until he left the room.

2

The State also called the complainant's older sister as a witness. The sister testified that, based upon her observations of the complainant's demeanor during the defendant's residence at the apartment, she believed the complainant "felt uncomfortable" and "didn't like being around" the defendant. The sister further stated that the defendant "would . . . go near [the complainant] or put his hand on her, and she would brush it off . . . she didn't really like him being around." The defendant attempted to impeach the sister's testimony by asking why she did not reveal this observation during her prior interview with prosecutors. The sister responded that she did not mention it because she "wasn't asked that question."

In response, the defendant sought to introduce the sister's prior statement from the same interview, during which she offered the following explanation as to why she assumed custody of the complainant following the disclosure of the sexual assault allegations:

> I had a hard time believing that [the defendant] was capable of doing all this when my mom was there, and for as long as it went on. I mean, I don't think she was - - I don't think she was sober. I don't think anybody that would be sober would not know if their daughter was being raped. I just - - I don't believe it.

The defendant explained that he intended to use the sister's prior statement to impeach her testimony about the complainant's demeanor and her belief that the complainant felt uncomfortable around the defendant. The defendant also stated that he intended to ask the sister whether the allegations "came as a surprise" to her and, if the sister responded negatively, he intended to use the sister's statement that she "had a hard time believing that [the defendant] was capable of doing all this" as further impeachment evidence.

Ultimately, the trial court found the statement to be inadmissible lay opinion evidence. The court reasoned that the defendant wants "the statement to come out so the jury believes that this witness doesn't believe her sister." Thus, the court found that the statement was "a backdoor way" of allowing the sister to opine upon the complainant's credibility. As a result, the trial court precluded the defendant from introducing the sister's prior statement for impeachment purposes. The jury found the defendant guilty on all four counts. This appeal followed.

## II. Analysis

### A. Exclusion of the Sister's Prior Statement

The defendant first argues that the trial court erred by excluding the sister's prior statement as impermissible lay witness opinion evidence. We review the trial court's evidentiary rulings for an unsustainable exercise of

discretion and reverse only if the court's decision was clearly untenable or unreasonable to the prejudice of the defendant's case. State v. Fiske, 170 N.H. 279, 286 (2017). We consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. Id. The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

A witness need not qualify as an expert to give testimony in the form of an opinion. See N.H. R. Ev. 701; see also State v. McDonald, 163 N.H. 115, 121 (2011). The trial court may permit lay opinion testimony as long as the witness's opinion is "rationally based on the witness's perception," helpful to the trier of fact, and "not based on scientific, technical, or other specialized knowledge." N.H. R. Ev. 701. However, it is the province and obligation of the jury alone to determine the credibility of witnesses. McDonald, 163 N.H. at 121. Therefore, although witnesses may give lay opinion testimony on a variety of topics, they are not permitted to give lay opinion testimony regarding the credibility of another witness. Id.; see also State v. Lopez, 156 N.H. 416, 423-24 (2007) (establishing "a broad prohibition on questions requiring a witness to comment upon the credibility of other witnesses"). This prohibition applies to testimony that explicitly comments upon credibility, as well as testimony that indirectly comments upon credibility. McDonald, 163 N.H. at 123.

Here, the parties dispute whether, in her prior statement, the sister commented upon the complainant's credibility. The defendant argues that he "did not proffer the line of cross-examination for the purpose of eliciting [the sister's] opinion on [the complainant's] credibility." Instead, he argues, the prior statement impeached the sister's credibility because it was inconsistent with her testimony about the complainant's demeanor around the defendant. The State, on the other hand, argues that "the defendant intended to use" the sister's prior statement "to show the jury that [the sister] doubted the truth of [the complainant's] allegations." In the State's view, the prior statement is impermissible impeachment evidence because it amounts to a comment upon the complainant's credibility.

We disagree. Contrary to the State's argument, the sister's prior statement is not "equivalent to [the sister] stating that the [complainant] was lying or mistaken." The statement indicates the sister's surprise that the defendant "was capable of" sexually assaulting the complainant "when [her] mom was there." That the sister was surprised about the complainant's allegations against the defendant does not mean that the sister doubted the complainant's credibility or the veracity of her allegations.

Moreover, the defendant sought to use this statement to impeach the credibility of the sister, not the complainant. Specifically, the defendant sought to draw the jury's attention to the inconsistency between the sister's prior

4

statement and her testimony about the complainant's demeanor and her belief that the complainant felt uncomfortable around the defendant. The defendant did not propose to ask the sister whether "other witnesses had lied to the jury." Lopez, 156 N.H. at 423; cf. State v. Parker, 160 N.H. 203, 212-13 (2010) (concluding that the court erred by "allowing the prosecutor to ask the defendant whether his son had lied"). Nor did the proffered line of inquiry implicitly seek an opinion as to the complainant's credibility. Cf. McDonald, 163 N.H. at 122-23 (holding that comments characterizing the defendant's emotions as "feigned" and body language as "over-exaggerated" impermissibly commented indirectly upon the credibility of another witness (quotation omitted)). Thus, allowing the defendant's proposed line of inquiry would not have invaded "the province and obligation of the jury to determine" the credibility of witnesses. Id. at 123.

We further conclude that the sister's prior statement was admissible as a prior inconsistent statement. New Hampshire Rule of Evidence 613 provides: "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." N.H. R. Ev. 613(b). Here, the parties dispute whether the sister's prior statement was actually inconsistent with her testimony. See United States v. Young, 248 F.3d 260, 267 (4th Cir. 2001) (explaining that, under Federal Rule of Evidence 613(b), admissibility "first requires that a prior statement be inconsistent").

"A prior statement is inconsistent if it, taken as a whole, either by what it says or by what it omits to say affords some indication that the fact was different from the testimony of the witness whom it sought to contradict." United States v. Barile, 286 F.3d 749, 755 (4th Cir. 2002) (quotation omitted) (construing identical federal rule of evidence); see 4 Mark S. Brodin et al., Weinstein's Federal Evidence § 613.04[1], at 613-18 (2d ed. 2021) ("Any statement is inconsistent if under any rational theory it might lead to any relevant conclusion different from any other relevant conclusion resulting from anything the witness said."). Here, the sister's prior statement, demonstrating her surprise, contrasted with her testimony about the complainant's demeanor when in the defendant's presence. One rational theory supporting the admission of the sister's prior statement was that, if she had previously made her professed observations of the complainant's demeanor, then she would have been less likely to express surprise when the complainant disclosed the alleged abuse. Indeed, her initial reaction to the complainant's disclosure offers "some indication that the fact was different from" the inference drawn from her testimony regarding the complainant's demeanor as being consistent with someone suffering from sexual abuse. Barile, 286 F.3d at 755. Accordingly, the sister's prior statement was admissible as a prior inconsistent statement, and the trial court erred by barring its admission.

5

The State argues, in the alternative, that any error was harmless beyond a reasonable doubt. We take this opportunity to clarify our harmless error standard. To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. See State v. Papillon, 173 N.H. 13, 28 (2020). This standard applies to both the erroneous admission and the exclusion of evidence. Id. An error may be harmless beyond a reasonable doubt if: (1) the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight; State v. Dellorfano, 128 N.H. 628, 637 (1986), or (2) the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt, State v. Peters, 162 N.H. 30, 36-38 (2011). We review these factors to determine whether an error affected a verdict. Either factor can be a basis supporting a finding of harmless error beyond a reasonable doubt. See State v. Pelkey, 145 N.H. 133, 137-38 (2000) (concluding error was not harmless where alternative evidence was not overwhelming and erroneously admitted evidence "was not inconsequential").

Here, the State does not argue that the evidence of the defendant's guilt was overwhelming. Accordingly, we confine our review to whether the excluded evidence was cumulative or inconsequential. The State argues that the improperly excluded evidence was merely cumulative because the defendant had previously impeached the sister's testimony upon this point by asking why she did not mention her observations of the complainant's demeanor towards the defendant in her prior interview with prosecutors. In addition, the State argues that the improperly excluded evidence was inconsequential because the sister's prior statement was amenable to varying interpretations and, thus, "it would have served as poor impeachment material."

We are unpersuaded. Although the defendant previously attempted to impeach the sister's testimony about her observations of the complainant's demeanor, the sister effectively rebutted the inquiry by responding that she "wasn't asked that question" during her prior interview. Further, as we previously concluded, the sister's prior statement was admissible as a prior inconsistent statement given that at least one rational theory supported its admission on that basis. Whether the prior inconsistent statement constituted "poor impeachment material" or could have been interpreted in a variety of ways was for the jury to determine. As an appellate court, we cannot hypothesize how this evidence would have developed in the absence of the trial court's error.

Moreover, the improperly excluded evidence was not cumulative or inconsequential "in relation to the strength of the State's evidence of guilt." Papillon, 173 N.H. at 29 (emphasis added). At trial, no other person testified to witnessing the assault and no physical evidence corroborated the complainant's testimony. Nor did the State introduce evidence of an inculpatory statement by the defendant. Significantly, the mother testified that

she observed nothing "out of the ordinary" with respect to the defendant's behavior towards the complainant throughout his residency at the apartment. Therefore, as in many sexual assault cases, the trial centered upon the credibility of the complainant. See State v. Reynolds, 136 N.H. 325, 329 (1992) (holding that erroneous admission of evidence was not harmless because "the case was ultimately and essentially a credibility contest between the [complainant] and the defendant" and "the [complainant's] credibility had been attacked by the defense with some success"). Indeed, in its closing, the State repeatedly emphasized that the jury's verdict depended upon whether the jury believed the complainant's testimony.

At numerous points during the trial, the defendant challenged the complainant's credibility. Foremost, the complainant admitted to lying during her CAC interview by claiming that the defendant "beat" her during the sexual assaults. When asked why she lied, the complainant responded that she "wanted to get him more in trouble." Furthermore, during his cross-examination of the complainant, the defendant drew attention to the complainant's inconsistent statements concerning the timing of the assaults.

Additionally, during his cross-examination of the complainant, the defendant called into question a number of the complainant's prior statements, including statements in which she alleged that: (1) she observed the defendant try to touch her mother "the same way" that the defendant touched her; and (2) the defendant would frequently "run around the house naked at night" in her mother's presence. However, the mother denied that either of those events occurred. Against this backdrop, the sister's testimony describing her prior observations of the complainant's behavior, consistent with a child suffering from sexual abuse, provided the only support for the complainant's testimony. Although we recognize that a sexual assault complainant's testimony requires no corroboration, see RSA 632-A:6, I (2016), on the record before us, we cannot conclude that barring the proposed line of cross-examination — aimed at impeaching the sister's testimony — was inconsequential or cumulative and by extension did not affect the jury's verdict.

B. Plain Error Review for Sufficiency of the Evidence

The defendant next argues that the evidence was insufficient to prove a pattern of attempted sexual intercourse. To convict the defendant of "a pattern of sexual assault," RSA 632-A:2, III, the State had to prove beyond a reasonable doubt that, among other things, the defendant committed "more than one act under RSA 632-A:2 . . . upon the same victim over a period of 2 months or more and within a period of 5 years," RSA 632-A:1, I-c. The defendant argues that the evidence was insufficient to prove that the defendant "attempted [sexual] intercourse more than once" and that "any second such act occurred at least two months after a first act."

7

The defendant concedes that he failed to preserve this issue for appeal. Therefore, our review is for plain error. Under the plain error rule, we may consider errors not raised before the trial court. State v. Hanes, 171 N.H. 173, 182 (2018). To find plain error: (1) there must be error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. See id. The plain error rule is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result. Id.

With respect to the first prong of plain error review — whether there was error — we review the evidence to determine whether it was sufficient to prove the essential elements of a pattern of attempted sexual intercourse charge beyond a reasonable doubt. See State v. Guay, 162 N.H. 375, 381 (2011); see also State v. Houghton, 168 N.H. 269, 273-74 (2015). A challenge to the sufficiency of the evidence presents a question of law; therefore, our standard of review is de novo. See State v. Stanin, 170 N.H. 644, 648 (2018). To prevail upon a challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. Id.; see Houghton, 168 N.H. at 271.

We conclude that the evidence was insufficient to support the defendant's conviction on the pattern of sexual intercourse indictment. At trial, the complainant testified that "[s]ometimes his pee pee would touch, he'd try to . . . put it in my vagina." There was no further testimony about when or how often such attempted intercourse occurred during the defendant's four to five month residence at the apartment. Even construing the word "[s]ometimes" — in the light most favorable to the State — as establishing that such conduct occurred more than once, the complainant's testimony does not demonstrate the frequency of the conduct, nor does it establish a temporal connection between discrete acts of attempted sexual intercourse. Therefore, viewing this testimony in the light most favorable to the State, no rational juror could have found, based upon this testimony alone, and without making assumptions of facts not in evidence, that the defendant attempted to engage in sexual intercourse with the complainant more than once "over a period of 2 months or more." RSA 632-A:1, I-c.

To support its argument that the evidence was sufficient, the State points to the complainant's testimony that the defendant touched the intimate parts of her body "on most nights." Indeed, at trial, the complainant testified that the defendant touched her breasts, her buttocks, and her vagina "on most nights" and that such touching began about one month after the defendant moved into the apartment and continued throughout his occupancy there. Contrary to the State's argument, however, this testimony does not establish,

8

by implication or otherwise, that the defendant also attempted sexual intercourse "on most nights." Nothing in the complainant's testimony suggested that the instances of attempted sexual intercourse occurred with the same frequency as the instances of touching the intimate parts of her body. The complainant testified about each act of touching separately, and at no point during that testimony did she mention attempted intercourse.

Consequently, the only evidence demonstrating the frequency of the attempted sexual intercourse is the complainant's testimony that "[s]ometimes his pee pee would touch, he'd try to . . . put it in my vagina." Because this testimony was insufficient to establish that the defendant attempted sexual intercourse more than once "over a period of 2 months or more," we conclude that the State failed to prove the essential elements of this pattern offense beyond a reasonable doubt. Therefore, the trial court erred by failing to dismiss the indictment on that basis. See RSA 632-A:1, I-c; Houghton, 168 N.H. at 273-74 (holding that because the evidence was insufficient with respect to an essential element on some of the charges "it was error to submit those charges to the jury").

We must next address whether the error was plain. See Hanes, 171 N.H. at 182. An error is plain when it was clear or obvious. See State v. Mueller, 166 N.H. 65, 69 (2014). We conclude that the error was plain because the evidence was insufficient to establish that the attempted sexual intercourse occurred more than once "over a period of 2 months or more," an essential element of the crime. See RSA 632-A:1, I-c; see also RSA 632-A:2, III. Further, we conclude that the error affected the defendant's substantial rights because the trial court's failure to dismiss the indictment resulted in the defendant's conviction. See Guay, 162 N.H. at 384. Finally, because the jury convicted the defendant based upon insufficient evidence of guilt, allowing the defendant's conviction to stand would seriously affect the fairness and integrity of judicial proceedings. See id. Accordingly, the trial court committed plain error, and we reverse the defendant's conviction on the pattern of attempted sexual intercourse charge.

C. Review of Confidential Records

Finally, the defendant asks this court to review the confidential records to determine whether, following in camera review, the trial court improperly withheld certain of those records. On November 4, 2021, we ordered the trial court to reconsider the confidential records in accordance with the standard set forth in State v. Girard, 173 N.H. 619, 628-29 (2020). Thereafter, the trial court concluded that it erred by failing to disclose one page of confidential records, but that this error was harmless. The court declined to release the remaining records, noting that the bulk of those records did not pertain to this case.

9

We review the trial court's decision on this issue for an unsustainable exercise of discretion.  Id. at 627.  Based upon our review of the records, we affirm the trial court's determination that only one page of the records should have been released.  Because we reverse and remand on other grounds, we need not address whether the court's failure to release that page was harmless.  On remand, if the State decides to retry the defendant on the remaining charges, the court should disclose that page to the parties.  We offer no opinion as to the admissibility of that document in the first instance.

## IV. Conclusion

For the foregoing reasons, we reverse and remand.  Any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived.  State v. Bazinet, 170 N.H. 680, 688 (2018).

Reversed and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.